The Honorable Ricardo S. Martinez

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                Plaintiff,<br><br>  v.<br><br>ALDERWOOD SURGICAL CENTER, LLC, a Washington limited liability company; NORTHWEST NASAL SINUS CENTER P.S., a Washington professional service corporation; and JAVAD A. SAJAN, M.D.,<br><br>                Defendants. | NO. 2:22-cv-01835-RSM<br><br>STATE'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS UNDER FRCP 12(c)<br><br>NOTE ON MOTION CALENDAR:<br>Friday, April 21, 2023 |

STATE'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS UNDER FRCP 12(c) (NO. 2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 2

    A. Defendants Have Used NDAs for Many Years to Suppress Honest Patient Reviews ................................................................................................................ 2

    B. Congress Passed the CRFA to Protect Consumers' Rights to Freely Share Their Views Regarding a Business's Goods and Services and to Ensure Fair Competition ......................................................................................................... 3

III. STANDARD OF REVIEW ............................................................................................ 5

IV. ARGUMENT .................................................................................................................. 5

    A. Allure's Third NDA Restricts Consumers from Posting Reviews ........................ 5

        1. Allure's Third NDA "restricts" patient reviews within the plain meaning of the CRFA .................................................................................................. 6

        2. Allure's Third NDA should be viewed through the lens of an ordinary consumer ........................................................................................................ 9

        3. Allure's reliance on state contract law is misplaced ..................................... 11

    B. The State Has Not Asserted a HIPAA Claim as to the Third NDA ..................... 12

V. CONCLUSION ............................................................................................................. 13

STATE'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL JUDGMENT ON
THE PLEADINGS UNDER FRCP 12(c) (NO.
2:22-cv-01835-RSM) - ii

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# TABLE OF AUTHORITIES

**Cases**

*Boise Cascade Corp. v. EPA,*
   942 F.2d 1427 (9th Cir. 1991) .................................................................................. 6, 7

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,*
   637 F.3d 1047 (9th Cir. 2011) ....................................................................................... 5

*Children's Hosp. & Health Ctr. v. Belshe,*
   188 F.3d 1090 (9th Cir. 1999) ....................................................................................... 6

*Dacumos v. Toyota Motor Credit Corp.,*
   287 F. Supp. 3d 1152 (W.D. Wash. 2017) .................................................................... 5

*Edmondson v. Allen-Russell Ford, Inc.,*
   577 F.2d 291 (5th Cir. 1978) ....................................................................................... 10

*FTC v. AT&T Mobility LLC,*
   883 F.3d 848 (9th Cir. 2018) ......................................................................................... 7

*FTC v. Roca Labs, Inc.,*
   345 F. Supp. 3d 1375 (M.D. Fla. 2018) ........................................................................ 3

*FTC v. Sterling Drug, Inc.,*
   317 F.2d 669 (2d Cir. 1963) ........................................................................................ 10

*Global NAPs Cal., Inc. v. PUC of Cal.,*
   624 F.3d 1225 (9th Cir. 2010) ..................................................................................... 11

*Illinois Bell Tel. Co. v. Global NAPs Illinois, Inc.,*
   551 F.3d 587 (7th Cir. 2008) ....................................................................................... 11

*Ma v. Ashcroft,*
   361 F.3d 553 (9th Cir. 2004) ....................................................................................... 10

*Scarborough v. Atl. Coast Line R. Co.,*
   178 F.2d 253 (4th Cir. 1949) ....................................................................................... 10

*Smith v. Cash Store Mgmt., Inc.,*
   195 F.3d 325 (7th Cir. 1999) ....................................................................................... 10

*Tanner Elec. Co-op. v. Puget Sound Power & Light Co.,*
   128 Wash. 2d 656, 911 P.2d 1301 (1996) ................................................................... 11

*Topa Equities, Ltd. v. City of Los Angeles,*
   342 F.3d 1065 (9th Cir. 2003) ....................................................................................... 7

STATE'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL JUDGMENT ON
THE PLEADINGS UNDER FRCP 12(c) (NO.
2:22-cv-01835-RSM) - iii

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*United States v. Mohrbacher*,
    182 F.3d 1041 (9th Cir. 1999) .................................................................................................. 7

*United States v. Williams*,
    659 F.3d 1223 (9th Cir. 2011) .............................................................................................. 6, 10

**Statutes**

15 U.S.C. § 45b(a) .......................................................................................................................... 4

15 U.S.C. § 45b(a)(3)(A) ................................................................................................................ 9

15 U.S.C. § 45b(b) ..................................................................................................................... 4, 7

15 U.S.C. § 45b(b)(1) ..................................................................................................................... 6

15 U.S.C. § 45b(c) .......................................................................................................................... 4

15 U.S.C. § 45b(d)(2)(A) ............................................................................................................... 4

15 U.S.C. § 45b(e)(1) ..................................................................................................................... 4

**Other Authorities**

162 Cong. Rec. H5295-01, 2016 WL 4736846 (Sept. 12, 2016) ................................... 3, 4, 6, 10

Merriam-Webster.com,
    http://merriam-webster.com/dictionary/impede ..................................................................... 7

Merriam-Webster.com,
    http://merriam-webster.com/dictionary/restrain ..................................................................... 7

Oxford English Dictionary,
    https://www.oed.com/view/Entry/164018?rskey=o5HRYv&result=2#eid ............................ 7

Y. Alicia Hong, et al., *What Do Patients Say About Doctors Online: a Systematic
    Review of Studies of Patient Online Reviews*, Journal of Medical Internet Research
    21(7) (July 2019) ..................................................................................................................... 4

STATE'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL JUDGMENT ON
THE PLEADINGS UNDER FRCP 12(c) (NO.
2:22-cv-01835-RSM) - iv

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# I. INTRODUCTION

For years, Defendants required thousands of their patients to sign form nondisclosure agreements (NDAs) restricting them from posting negative reviews. When patients did post negative reviews, Defendants threatened to sue them, pointing to those NDAs. Not only was this silencing unfair and deceptive under Washington's Consumer Protection Act (CPA), but the gag clauses Defendants used were also specifically prohibited by the Consumer Review Fairness Act (CRFA), which Congress unanimously passed in 2016. The State brought this action to enforce these remedial consumer protection statutes. The thousands of consumers who signed these NDAs deserve a court ruling confirming what is already enshrined in the federal law—that these form NDAs and the speech restrictions they impose on consumers are illegal and void.

Although the State challenges four NDAs used by Defendants (Complaint, Dkt. #1, Ex. A-D), Defendants' motion focuses on only one (Ex. C, hereafter the Third NDA), and is limited to the narrow issue of whether the preconditions imposed on consumers in that NDA "restrict" consumers from posting reviews within the meaning of the CRFA. The Third NDA is entitled "**Mutual Nondisclosure Agreement**," all in bold, and requires patients to agree that if they have any concerns about the care or services they received, "*First*, patient agrees to call" and "allow [Defendants] the opportunity to resolve the issue." Dkt. #1, Ex. C (emphasis added). Then, after first contacting Defendants to discuss their concerns, the patient must further agree to "work with" Defendants "*until* a resolution is reached." *Id.* (emphasis added).

Defendants' argument that these open-ended, potentially limitless preconditions do not "restrict" consumers from posting reviews defies common sense and conflicts with the plain language and purpose of the CRFA. Their interpretation, if adopted, would allow businesses to impose boundless conditions, in effect prohibitions, on a consumer's right to free speech, thereby depriving the public of an essential means for exchanging information about the goods and services they consume. Gagging consumers and restricting them from sharing honest information with other consumers is the very practice the CRFA is designed to address. By

STATE'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL JUDGMENT ON
THE PLEADINGS UNDER FRCP 12(c) - 1

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

imposing these preconditions on thousands of patients before they could post reviews about the care or services they received, Defendants' Third NDA restricted patients from sharing their truthful experiences and opinions with other consumers, thereby violating the CRFA's plain language.

Defendants' motion also asks the Court to dismiss a HIPAA claim the State has not brought, arguing that the Third NDA "does not predicate treatment on the patient signing an authorization form for the release of protected health information." Dkt. #17 at p. 4.[1] This part of Defendants' motion fails on its face because the State has not asserted a HIPAA claim as to the Third NDA—that is, Defendants have moved to dismiss a claim the State has not pled.

## II.     BACKGROUND

**A.     Defendants Have Used NDAs for Many Years to Suppress Honest Patient Reviews**

Since 2016, Alderwood Surgical Center, LLC, Northwest Nasal Sinus Center P.S., and Javad A. Sajan, M.D. (collectively, Allure), have used four different NDAs to suppress patient reviews. Dkt. #1, ¶¶ 6-13, 40-41, 46-53, 63-72 & Ex. A-D. Three of them—attached as Exhibits A, B, and C to the Complaint—are different iterations of a pre-service NDA that Allure required patients to sign before receiving any consultation or services. Dkt. #1, ¶¶ 6-9, 40-41, 46-53 & Ex. A-C. All three of these pre-service NDAs had a provision that prohibited or restricted patients from posting an honest negative review. *Id.* Of those three, the first and second pre-service NDAs also required patients to agree that Allure could disclose their private health information (PHI) when responding to a patient's online review if the patient had violated the NDA. Dkt. #1, ¶¶ 8, 46-47, 54-57 & Ex. A-B. However, as the Complaint clearly states, the Third NDA *did not* have a provision regarding disclosure of the patient's PHI. Dkt. #1, ¶ 48 & Ex. C. Finally, the fourth NDA is a post-service NDA in which Allure required, among other things, that patients agree to take down any negative reviews they had previously posted and

---

[1] For ease of reference, citations to page numbers of documents already in the court record are cited according to the ECF page number.

STATE'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL JUDGMENT ON
THE PLEADINGS UNDER FRCP 12(c) - 2

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

refrain from posting any future reviews of Allure. Dkt. #1, ¶¶ 10-13, 63-72 & Ex. D.

The pre-service NDA, in each of its versions, was a take-it-or-leave-it form agreement that Allure required all patients to sign before any consultation or treatment, without any meaningful opportunity to negotiate its terms. Dkt. #1, ¶ 49. Patients who had a consultation with Dr. Sajan prior to treatment also had to pay a $100 non-refundable consultation fee before being presented with the pre-service NDA. Dkt. #1, ¶¶ 42-44. In instances when patients posted a negative review, Allure routinely used these pre-service NDAs to threaten legal action and coerce patients to remove the negative reviews. Dkt. #1, ¶¶ 9, 74-76. Allure instructed employees to call patients who posted negative reviews and ask them to take down the review, reminding them they had signed the pre-service NDA. Dkt. #1, ¶ 74. If patients refused to take the review down, Allure increased threats of legal action and involved Allure's attorneys. Dkt. #1, ¶¶ 75-76. At Allure's team meetings, its in-house legal counsel regularly presented an Excel spreadsheet containing updates on Allure's progress in getting patients to remove negative reviews. Dkt. #1, ¶ 80.

**B.   Congress Passed the CRFA to Protect Consumers' Rights to Freely Share Their Views Regarding a Business's Goods and Services and to Ensure Fair Competition**

Manipulating online reviews has long been recognized as an unfair and deceptive practice under state consumer protection law and the Federal Trade Commission Act (FTC Act). *See, e.g.*, *FTC v. Roca Labs, Inc.*, 345 F. Supp. 3d 1375, 1393-96 (M.D. Fla. 2018) (holding that business's threats to enforce gag clauses in form agreements to restrict consumers from posting negative reviews were "unfair" under the FTC Act). In 2016, Congress responded to the proliferation of businesses using gag clauses and non-disparagement clauses in form contracts by unanimously passing the CRFA, recognizing the importance of ensuring that consumers can freely communicate with other consumers regarding a seller's goods, services, and conduct. 114th Cong., 2d Sess., 162 Cong. Rec. H5295-01, 2016 WL 4736846 (Sept. 12, 2016) (statement

STATE'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL JUDGMENT ON
THE PLEADINGS UNDER FRCP 12(c) - 3

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

of Rep. Schakowsky). As one Congressperson aptly noted, "[c]onsumers should be able to voice their criticisms, and allowing reviews can help other consumers make informed choices." *Id*.

This is particularly important in the healthcare context, where the patient's relationship with their health care provider necessarily depends on access to truthful information and on patient-physician trust. Online reviews are often a consumer's primary or only source of third-party information about health care providers in their search for a provider they feel they can entrust with sensitive, and in some cases life-altering, procedures. *See* Dkt. #1, ¶¶ 2, 29 n.1 (citing Y. Alicia Hong, et al., *What Do Patients Say About Doctors Online: a Systematic Review of Studies of Patient Online Reviews*, Journal of Medical Internet Research 21(7) (July 2019) (discussing increasing importance of online reviews in patients' decision making), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6475821/).

The CRFA provides that a form contract provision that "prohibits or restricts the ability" of a consumer to communicate a review or assessment of a business's goods, services, or conduct is "void from inception." 15 U.S.C. § 45b(a)-(b). Offering a form contract with such a provision is unlawful under the Act. 15 U.S.C. § 45b(c). The statute empowers the Federal Trade Commission to enforce this section in the same manner as it would any other unfair or deceptive act or practice provision under the FTC Act. 15 U.S.C. § 45b(d)(2)(A). And it grants state attorneys general the authority to bring enforcement actions on behalf of their residents to obtain "appropriate relief." 15 U.S.C. § 45b(e)(1).

Online review sites have also embraced the CRFA and integrated it into their own policies. Yelp, for example, expressly requires companies that list themselves on Yelp, such as Allure, to comply with the CRFA, and prohibits them from using "gag clauses" that restrict consumers from posting negative reviews. Dkt. #1, ¶¶ 50-51. Another example is RealSelf, an online review site that features reviews of healthcare providers, whose General Counsel confronted Allure's in-house legal counsel about whether Allure was using "some sort of 'no

STATE'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL JUDGMENT ON
THE PLEADINGS UNDER FRCP 12(c) - 4

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

negative reviews' or non-disclosure agreement with its patients," expressly referring to the "Consumer Review Fairness Act." Dkt. #1, ¶ 52.

### III.   STANDARD OF REVIEW

In deciding a Rule 12(c) motion for judgment under the pleadings, the Court uses "the same standard of review" applied to a Rule 12(b)(6) motion, as they are "functionally identical." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation omitted). "Thus, the Court must accept as true all material facts alleged in the pleadings and draw all reasonable inferences in favor of the nonmoving party." *Dacumos v. Toyota Motor Credit Corp.*, 287 F. Supp. 3d 1152, 1154 (W.D. Wash. 2017). "'Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.'" *Id.* (citation omitted). The Court may also "consider materials attached to or incorporated by reference in the pleadings." *Id.*

### IV.   ARGUMENT

**A.   Allure's Third NDA Restricts Consumers from Posting Reviews**

Allure's Third NDA is the only one at issue in this motion. *See* Dkt. #17 at pp. 4-11; Dkt. #1, Ex. C. While Allure acknowledges that the Third NDA, "[b]y its terms, . . . contains a promise to contact Defendants and give them an opportunity to resolve any negative issues" (Dkt. #17 at p. 9), it simply ignores all of the language of the NDA that restricts its patients' ability to post negative reviews. The Third NDA unlawfully "restricts" patients from posting negative reviews by requiring them to agree, in an agreement titled "*Mutual Nondisclosure Agreement*," that if they have any concerns about the care or services they received, "*first*" they would call the practice and "allow [Allure] the opportunity to resolve the issue," and then, after contacting Allure to discuss their concerns, they would "work with" Allure "*until* a resolution is reached." Dkt. #1, Ex. C (emphasis added). By requiring its patients to agree to comply with

STATE'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL JUDGMENT ON
THE PLEADINGS UNDER FRCP 12(c) - 5

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

these preconditions before posting negative reviews, Allure "restricted" them from posting reviews under the plain language of the CRFA.

1. **Allure's Third NDA "restricts" patient reviews within the plain meaning of the CRFA**

The CRFA states that "a provision of a form contract is void from the inception of such contract if such provision . . . *prohibits or restricts* the ability of an individual who is a party to the form contract to engage in a covered communication." 15 U.S.C. § 45b(b)(1) (emphasis added). Under the plain, ordinary meaning of the term "restrict," Allure's Third NDA violates the CRFA because it requires patients to "first" call Allure and allow it to resolve any concerns, and to "work with" Allure "until a resolution is reached," *before* sharing a negative review on any form of media. That is a precondition that significantly restrains and limits a patient's ability to otherwise freely post an honest review.

"In statutory construction, our starting point is the plain language of the statute." *United States v. Williams*, 659 F.3d 1223, 1225 (9th Cir. 2011). "To determine the plain meaning of a statutory provision, we examine not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy." *Children's Hosp. & Health Ctr. v. Belshe*, 188 F.3d 1090, 1096 (9th Cir. 1999). The CRFA must be interpreted "as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991).

The CRFA is also a remedial statute intended to protect consumers. Congress's stated purpose in passing the law was to stop businesses from using form agreements "[i]n an unjust effort to stop consumers from posting honest reviews online" by "mak[ing] these clauses illegal and void[ing] any contract that contains a non-disparagement clause." 114th Cong., 2d Sess., 162 Cong. Rec. H5295-01, 2016 WL 4736846 (Sept. 12, 2016) (statement of Rep. Kennedy).

STATE'S OPPOSITION TO DEFENDANTS'  
MOTION FOR PARTIAL JUDGMENT ON  
THE PLEADINGS UNDER FRCP 12(c) - 6

ATTORNEY GENERAL OF WASHINGTON  
Consumer Protection Division  
800 Fifth Avenue, Suite 2000  
Seattle, WA 98104-3188  
(206) 464-7744

Because the CRFA is a remedial statute, it "should be construed broadly to effectuate its purposes.'" *FTC v. AT&T Mobility LLC*, 883 F.3d 848, 854 (9th Cir. 2018) (citation omitted).

Because the CRFA applies to a form contract that "prohibits or restricts," the term "restrict" must have a separate meaning from "prohibit," since otherwise Congress's inclusion of the term would be superfluous. *See Boise Cascade*, 942 F.2d at 1432 (statute is interpreted to avoid rendering term superfluous). Because the CRFA does not define "restrict," the term should be given its "ordinary meaning" by looking to dictionary definitions. *United States v. Mohrbacher*, 182 F.3d 1041, 1048 (9th Cir. 1999) ("When there is no indication that Congress intended a specific legal meaning for the term, the court may look to sources such as dictionaries for a definition."). Merriam-Webster defines "restrict" as "to confine within bounds; restrain." Merriam-Webster.com, http://merriam-webster.com/dictionary/restrain (last visited April 11, 2023). Similarly, the Oxford English Dictionary defines "restrict" as "to limit." The Oxford English Dictionary, https://www.oed.com/view/Entry/164018?rskey=o5HRYv&result=2#eid (last visited April 11, 2023). Consistent with these dictionary definitions, the Ninth Circuit has interpreted "restrict" as to "put certain limitations on." *Topa Equities, Ltd. v. City of Los Angeles*, 342 F.3d 1065, 1070 (9th Cir. 2003) (looking to the definition in Webster's New World College Dictionary).

The heading of the relevant provision of the CRFA further informs the meaning of "restrict." The heading reads, "[i]nvalidity of contracts that *impede* consumer reviews." 15 U.S.C. § 45b(b) (emphasis added). "Impede" is defined as "to interfere with or slow the progress of." Merriam-Webster.com, http://merriam-webster.com/dictionary/impede (last visited April 11, 2023). Thus, an NDA that restrains or places limits on a consumer's ability to communicate honest reviews falls within the scope of "restricts" and violates the CRFA. Under all of these definitions, Allure's Third NDA "restricts" consumers from posting reviews because it imposes limitations on their ability to do so.

STATE'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL JUDGMENT ON
THE PLEADINGS UNDER FRCP 12(c) - 7

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Allure's Third NDA reads in its entirety, with the exception of business logos and signature lines, as follows:

**Mutual Nondisclosure Agreement**

We take great pride in our reputation for providing the highest levels of quality medical care to our patients. However, we realize there are times when some patients may not be satisfied with the outcome of their treatments. We also recognize that in these instances, a patient has every right to voice their opinion if they are dissatisfied with our service. We respect every patient's right to do so and we welcome the opportunity to correct any issue or concern that may arise.

*If I am concerned with the care or service provided to me*, Alderwood Surgical Center (DBA Gallery of Cosmetic Surgery, Allure Esthetic, and Seattle Plastic Surgery) and _____ (Patient Name) *agree to do the following*: (Initials):

- *First*, *Patient agrees to call* Alderwood Surgical Center at (206) 209-0988 or (425) 775-3561 *and allow* Dr. Javad Sajan or Dr. Craig Jonov, and any other person affiliated with Alderwood Surgical Center *the opportunity to resolve the issue. I understand that calling Alderwood Surgical Center is a more effective means of reaching a resolution than posting negative reviews. I understand that this Agreement covers all forms of media including online review sites*.
- Alderwood Surgical Center and its affiliates will make a good faith effort to resolve your concern and will communicate with you in a timely manner to expedite the process.
- I agree to work with Alderwood Surgical Center and its affiliates to correct the issue *until a resolution is reached*.

If you have any questions regarding this form, please do not hesitate to ask your physician or their assistants.

Dkt. #1, Ex. C (emphasis added).

It does not take a complex or strained interpretation to determine that this NDA "restricts" patients from posting negative reviews. As Allure points out, the language is "plainly worded and unambiguous." Dkt. #17 at p. 10. The heading, set forth in bold at the top of the document, is "**Mutual Nondisclosure Agreement**"—the restrictive meaning of which speaks for itself. Dkt. #1, Ex. C. It imposes preconditions through a sequence of patient obligations. It requires patients to "*first* . . . call" Allure if they have a concern and "allow" Allure "the

STATE'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL JUDGMENT ON
THE PLEADINGS UNDER FRCP 12(c) - 8

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

opportunity to resolve the issue." *Id.* (emphasis added). It then requires the patient to "work with" Allure "to correct the issue *until* a resolution is reached." *Id.* (emphasis added).

These are unambiguous limits, restraints, on a patient's ability to otherwise freely post a review about the business. "First" and "until" are common, well-understood sequential time references indicating that working with Allure to resolve the issue is a precondition to sharing a review. If that were not enough, the patient must initial that they "understand that calling Alderwood Surgical Center is a more effective means of reaching a resolution than posting negative reviews." Dkt. #1, Ex. C. The form contract goes on to elaborate that "this Agreement covers all forms of media including online review sites." *Id.* This sentence would be meaningless unless it is read to apply to the restriction on posting negative reviews. Finally, the statement that Allure "recognizes" a patient's right to voice their opinions if they are dissatisfied with Allure's services, Dkt. #1, Ex. C, has no effect because it is inoperative and immediately followed by the sequence of obligations and preconditions restricting the patient's speech rights.

**2.   Allure's Third NDA should be viewed through the lens of an ordinary consumer**

Allure argues that "[n]othing in the language of [the Third NDA] can be fairly interpreted to prohibit or restrict protected activity under the CRFA." Dkt. #17 at p. 8. This conclusion not only ignores the sequential preconditions in the Third NDA, as discussed above, but also fails to acknowledge the appropriate lens through which the contract should be read.

The provisions at issue in a CRFA claim should be viewed through the lens of an ordinary consumer, not a legal scholar. The form contracts covered by the CRFA are only those "with standardized terms" that are "imposed on an individual without a meaningful opportunity for such individual to negotiate the standardized terms." 15 U.S.C. § 45b(a)(3)(A). Congress noted that some businesses have "snuck so-called non-disparagement clauses in terms of service agreements" and that consumers "often don't realize they have just given up their right to speak

STATE'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL JUDGMENT ON
THE PLEADINGS UNDER FRCP 12(c) - 9

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

openly about a bad experience." 114th Cong., 2d Sess., 162 Cong. Rec. H5295-01, 2016 WL 4736846 (Sept. 12, 2016) (statement of Rep. Schakowsky).

A contract that is formed from such an uneven power dynamic, buried in a take-it-or-leave-it form contract, should be evaluated from the vantage point of the audience for which it was intended: an ordinary consumer. The same principle governs written communications to consumers regulated under other federal consumer protection laws, as well, including credit disclosures mandated under the Truth and Lending Act (TILA), and advertisements regulated under other provisions of the FTC Act. *See Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 327-28 (7th Cir. 1999) ("The sufficiency of TILA-mandated disclosures is to be viewed from the standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor.") (internal citation omitted); *Edmondson v. Allen-Russell Ford, Inc.*, 577 F.2d 291, 296 (5th Cir. 1978) (viewing a disclosure of credit terms by the audience for which it was intended, namely, "ordinary laypersons"); *FTC v. Sterling Drug, Inc.*, 317 F.2d 669, 674 (2d Cir. 1963) (holding that advertisements should be viewed from the perspective of the general public).

In short, Allure's Third NDA imposes conditions on its patients, with clear time references, that limit and restrict them from communicating reviews about Allure in any media, including online review sites. Interpreting such restrictive preconditions as falling outside of the scope of the CRFA would be contrary to the plain language of the statute, would frustrate the statutory purpose and policy objectives of the law, and would lead to absurd results, leaving consumers with little recourse and undermining the remedial goals of the CRFA. *See Williams*, 659 F.3d at 1225 ("starting point is the plain language of the statute"); *Ma v. Ashcroft*, 361 F.3d 553, 558 (9th Cir. 2004) ("statutory interpretations which would produce absurd results are to be avoided"); *Scarborough v. Atl. Coast Line R. Co.*, 178 F.2d 253, 258 (4th Cir. 1949) (remedial statutes should be liberally construed to discourage attempted evasions by wrongdoers).

STATE'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL JUDGMENT ON
THE PLEADINGS UNDER FRCP 12(c) - 10

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

### 3. Allure's reliance on state contract law is misplaced

Allure's argument that state law controls the interpretation of this contract is misplaced because the issue before the Court is simply whether the Third NDA violates the plain language of the CRFA. The case on which Allure relies, *Global NAPs Cal* (*see* Dkt. #17 at p. 9), is inapposite. That case focused on a dispute over a contract that fulfilled obligations imposed by the Telecommunications Act. *See Global NAPs Cal., Inc. v. PUC of Cal.*, 624 F.3d 1225, 1228-29 (9th Cir. 2010). As explained in one of the cases on which *Global NAPs Cal* relied, in such cases "the suit is not based on federal law in any realistic sense" and Congress did not intend for federal law to govern the performance or non-performance of the carriers' agreements. *Illinois Bell Tel. Co. v. Global NAPs Illinois, Inc.*, 551 F.3d 587, 591-92 (7th Cir. 2008) (cited in *Global NAPs Cal*, 624 F.3d at 1228).

Here, the State's CRFA claim is entirely based on federal law, the CRFA, and Congress expressly intended the CRFA to render contracts violating the law as "void." *See* Part II.B, *supra*. There is no separate state contract law question involved in a CFRA claim. This is consistent with Congress's intent to provide a remedy for consumers entering into contracts with an uneven power dynamic where the consumer has no meaningful opportunity to negotiate. *See id.* Form agreements restricting consumer reviews are not typical agreements subject to state contract law.

However, even if Washington contract law were relevant (which it is not), the Third NDA still "restricts" consumer reviews. The touchstone of contract interpretation is the parties' intent. *Tanner Elec. Co-op. v. Puget Sound Power & Light Co.*, 128 Wash. 2d 656, 674, 911 P.2d 1301, 1310 (1996). The parties' intent is determined from the contractual language and from "viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties." *Id.* Contrary to Allure's argument, Washington contract law would not call for ignoring the bolded title of the agreement, "**Mutual Nondisclosure Agreement**," but would require

STATE'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL JUDGMENT ON
THE PLEADINGS UNDER FRCP 12(c) - 11

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

considering the contract as a whole including all of the restrictive terms discussed above. *See* Dkt. #17 at pp. 8-9. Furthermore, a patient's interpretation of the contract and Allure's practice of using the Third NDA to subsequently coerce patients into removing negative reviews, *see* Dkt. #1, ¶¶ 9, 74-76 & 80, confirm that the Third NDA restricts consumers from freely reviewing Allure.

**B.     The State Has Not Asserted a HIPAA Claim as to the Third NDA**

Finally, Allure's request to dismiss a claim the State has not brought must also be denied. The State challenges Allure's pre-service form NDAs "that conditioned treatment upon [patients'] purported prior authorized of disclosure of private patient health information." Dkt. #1, ¶ 167. Allure's first and second pre-service NDAs, used from August 2017 to January 2019, contained such a provision, as the Complaint states. Dkt. #1, ¶¶ 8, 46-47, 54-57 & Ex. A-B (asserting HIPAA claim as to first two pre-service NDAs). The State alleges that the Third NDA "was similar to the other two and continued to restrict patients from posting negative reviews, *but it no longer provided that Defendants could disclose patients' personal health information if they violated the agreement . . . .*" Dkt. #1, ¶ 48 (emphasis added). Because the State has not asserted a HIPAA claim as to the Third NDA, Allure's motion must be denied as to this purported HIPAA claim because it challenges a claim the State has not pled.

//
//
//
//
//
//
//
//
//

STATE'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL JUDGMENT ON
THE PLEADINGS UNDER FRCP 12(c) - 12

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## V. CONCLUSION

Allure's Rule 12(c) motion for partial judgment on the pleadings should be denied with prejudice. As to the CRFA claim, it should be denied because the Third NDA restricts consumers from posting reviews by placing preconditions on patients that "restrict" them from posting consumer reviews within the plain meaning of the CRFA. As to the HIPAA claim, the motion should be denied because the State has not asserted a HIPAA claim as to the Third NDA.

DATED this 17th day of April, 2023.

ROBERT W. FERGUSON
Attorney General

s/ *Camille McDorman*
MATTHEW GEYMAN, WSBA #17544
CAMILLE M. MCDORMAN, WSBA #53036
ZORBA LESLIE, WSBA #58523
Assistant Attorneys General
Attorneys for State of Washington
Attorney General's Office
800 Fifth Avenue, Suite 2000
Seattle, WA 98104

*I certify that this memorandum contains 4,167 words, in compliance with the Local Civil Rules.*
STATE'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL JUDGMENT ON
THE PLEADINGS UNDER FRCP 12(c) - 13

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury under the laws of the State of Washington that I caused a copy of the foregoing to be served on all counsel of record via the ECF system.

DATED this 17th day of April, 2023, at Seattle, Washington.

*s/ Camille McDorman*
CAMILLE M. MCDORMAN
Assistant Attorney General

STATE'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL JUDGMENT ON
THE PLEADINGS UNDER FRCP 12(c) - 14

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744