UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>ALDERWOOD SURGICAL CENTER, LLC, a Washington limited liability company; NORTHWEST NASAL SINUS CENTER P.S., a Washington professional service corporation; and JAVAD A. SAJAN, M.D.,<br><br>Defendants. | Case No. C22-1835RSM<br><br>ORDER DENYING DEFENDANTS' RULE 12(c) MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS |

## I.  INTRODUCTION

This matter comes before the Court on Defendants Alderwood Surgical Center, LLC, Northwest Nasal Sinus Center P.S., and Javad A. Sajan, M.D.'s Motion for Partial Judgment on the Pleadings.  Dkt. #17.  Plaintiff State of Washington has filed an opposition.  Dkt. #18.  The Court has determined that it can rule without oral argument.  As stated below, the Court DENIES Defendants' Motion.

## II.  FACTUAL BACKGROUND

For purposes of this 12(c) Motion, the Court will accept all facts in the Complaint, Dkt. #1, as true.  Unless stated otherwise, the following facts are drawn from that pleading.

ORDER GRANTING DEFENDANTS' RULE 12(c) MOTION TO DISMISS - 1

State and federal consumer protection laws prohibit businesses from unfairly or deceptively manipulating consumer reviews. For instance, the Consumer Review Fairness Act ("CRFA"), 15 U.S.C. § 45b, prohibits the use of "gag clauses" in form contracts that prevent, restrict, or suppress truthful consumer reviews.

Defendant Allure Esthetic is a plastic and cosmetic surgery business with offices in Lynnwood, Kirkland, and Seattle.  Allure Esthetic does business under several names, including Allure Esthetic, Alderwood Surgical Center, Gallery of Cosmetic Surgery, Seattle Plastic Surgery, Northwest Nasal Sinus Center, and Northwest Face & Body.  Allure Esthetic is owned and controlled by Defendant Javad A. Sajan, M.D., a plastic surgeon who advertises online, including on Instagram, Facebook, YouTube, Snapchat, and other social media, as @realdrseattle or "Real Dr. Seattle."

The State of Washington alleges that Defendants "systematically suppressed negative patient reviews by requiring their patients, before they received services (and in some cases before even having a consultation), to sign a form nondisclosure agreement (the pre-service NDA) that purported to restrict the patient's right to post truthful information about their experience with Defendants' services." Dkt. #1 at 2.

This allegedly occurred from August 15, 2017, to March 24, 2022, where Defendants "required over 10,000 patients to sign these illegal NDAs…" *Id*. at 3.

When patients posted negative reviews despite the pre-service NDA, Defendants contacted them and used the pre-service NDA—and the threat, or implied threat, of taking legal action to enforce it—to coerce them into taking down the negative reviews.

The Complaint includes specific allegations for different periods of time when different NDAs were implemented by Defendants.  Only one NDA is at issue in this partial Motion to

ORDER GRANTING DEFENDANTS' RULE 12(c) MOTION TO DISMISS - 2

Dismiss—an agreement allegedly used from January 11, 2019, to March 24, 2022 ("Exhibit C" attached to the Complaint, or "Agreement").  This document is entitled "Mutual Nondisclosure Agreement."  In the first paragraph it states, "we realize there are times when some patients may not be satisfied with the outcome of their treatments" and that "a patient has every right to voice their opinion if they are dissatisfied with our service."  Dkt. #1 at 42.  However, the Agreement then asks patients to agree that if they have any concerns about the care or services they received, "First, patient agrees to call… and allow [Defendants] the opportunity to resolve the issue."  *Id.*  The patient must agree that they "understand that calling Alderwood Surgical Center is a more effective means of reaching a resolution than posting negative reviews."  *Id*.  Finally, the patient must "agree to work with [Defendants] to correct the issue until a resolution is reached."  *Id*.  Unlike prior NDAs given to patients, the State of Washington explicitly alleges that this Exhibit C NDA "no longer provided that Defendants could disclose patients' personal health information if they violated the agreement…"  Dkt. #1 at 10.

The State of Washington alleges that this NDA violates the CRFA and the Washington Consumer Protection Act, RCW § 19.86.

The instant Motion was brought by Defendants on March 30, 2023.  Defendants move for partial judgment on the pleadings under Rule 12(c), arguing that "Exhibit C does not prohibit nor restrict protected activity (i.e. patient reviews)" and that "Exhibit C does not constitute a violation of HIPAA[1] or HITECH[2] because it does not contain language predicating treatment on the release of information."  Dkt. #17 at 1–2.  Other claims are not addressed.

---

[1] The Health Insurance Portability and Accountability Act.
[2] The Health Information Technology for Economic and Clinical Health Act ("HITECH") authorizes state attorneys general to enforce HIPAA's privacy provisions in district court, and to secure the remedies provided therein. 42 U.S.C. § 1320d-5(d)(1).

ORDER GRANTING DEFENDANTS' RULE 12(c) MOTION TO DISMISS - 3

## III. DISCUSSION

a. **Legal Standard**

"After the pleadings are closed – but within such time as not to delay the trial – any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard governing a Rule 12(c) motion for judgment on the pleadings is essentially the same as that governing a Rule 12(b)(6) motion. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir.1989); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir.1988)).

In making a Rule 12(b)(6) assessment, the court accepts all facts alleged by the non-moving party as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint or answer alleging counterclaims "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the pleading party "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint or answer need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, the pleading party's claims must be dismissed. *Id*. at 570.

The CRFA states that "a provision of a form contract is void from the inception of such contract if such provision . . . prohibits or restricts the ability of an individual who is a party to the form contract to engage in a covered communication." 15 U.S.C. § 45b(b)(1). Offering a

ORDER GRANTING DEFENDANTS' RULE 12(c) MOTION TO DISMISS - 4

form contract with such a provision is unlawful under the Act. 15 U.S.C. § 45b(c). The statute grants state attorneys general the authority to bring enforcement actions on behalf of their residents to obtain "appropriate relief." 15 U.S.C. § 45b(e)(1)

### b. Analysis

The State of Washington is clearly not alleging that the third NDA, Exhibit C, violates HIPAA.  The Court agrees with the State of Washington that "Defendants have moved to dismiss a claim the State has not pled."  Dkt. #18 at 6.  Defendants have "no objection to the WAG's concession that [Exhibit C] does not violate HIPAA, so long as the WAG is not allowed to later assert that it really does have a HIPAA claim based upon [Exhibit C]."  Dkt. #19 at 7.  The Court believes that this issue is now clear between the parties and that a Court ruling on this is unnecessary at this time.

Turning to the only other remaining issue, the Court cannot rule as a matter of law, based on the pleadings, that the agreement at Exhibit C does not violate the CRFA.  Accepting all facts alleged as true, and making all inferences in the light most favorable to the non-moving party, the Agreement could easily be construed by a fact-finder as prohibiting or restricting the ability of a consumer to communicate a negative review of Defendants' business.  The Agreement asks patients to promise not to do just that without "first" agreeing to call Defendants—a restriction.  The Agreement also requires patients to "agree to work with" Defendants to correct the issue "until a resolution is reached," an ambiguous phrase that could plausibly be interpreted as requiring Defendants' agreement that the issue has been resolved.  This edges closer to an actual prohibition on negative reviews.  It is entirely plausible that many patients (and jurors) would find such required actions awkward or onerous.  Given all of the above, the CRFA claim is plausible and dismissal is clearly not warranted under Rule 12(c).

ORDER GRANTING DEFENDANTS' RULE 12(c) MOTION TO DISMISS - 5

Defendants' arguments to the contrary improperly ask the Court to draw inferences in favor of the moving party, or to resolve issues of fact.

## IV.   CONCLUSION

Having reviewed the relevant briefing and the record, the Court hereby finds and ORDERS that Defendants' Motion for Partial Judgment on the Pleadings, Dkt. #17, is DENIED.

DATED this 12th day of May, 2023.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE