1

2

3                                                          The Honorable Ricardo S. Martinez

4

5

6

7                        **UNITED STATES DISTRICT COURT**
                         **WESTERN DISTRICT OF WASHINGTON**
8                                      **AT SEATTLE**

9   STATE OF WASHINGTON,                      NO. 2:22-cv-01835-RSM

10                         Plaintiff,          STATE'S MOTION TO COMPEL
                                               PRODUCTION OF CONSUMER
11          v.                                 NAMES AND EMAIL ADDRESSES
                                               IN KEY DOCUMENTS
12   ALDERWOOD SURGICAL CENTER, LLC,
     a Washington limited liability company;   NOTE FOR CONSIDERATION:
13   NORTHWEST NASAL SINUS CENTER              Friday, September 22, 2023
     P.S., a Washington professional service
14   corporation; and JAVAD A. SAJAN, M.D.,

15

16                         Defendants.

17

18

19

20

21

22

23

24

25

26

STATE'S MOTION TO COMPEL PRODUCTION OF
CONSUMER NAMES AND EMAIL ADDRESSES IN
KEY DOCUMENTS
(2:22-cv-01835-RSM)

# I.   INTRODUCTION AND RELIEF REQUESTED

In 2016, Congress unanimously enacted the Consumer Review Fairness Act (CRFA) to forbid companies from using form non-disclosure agreements (NDAs) to prohibit or restrict consumers from truthfully sharing their negative experiences in online reviews. Defendants' discovery responses confirm that they used both pre-service and post-service NDAs to restrict their patients from posting negative reviews *thousands* of times.[1] Defendants, however, refuse to disclose the identities of consumers who were the subject of these NDAs, unilaterally redacting all consumer names and email addresses from their post-service NDAs and from hundreds of pages of emails and other documents demonstrating how Defendants used the NDAs to threaten and silence consumers.[2]

The State requested these documents in April, but Defendants refused to produce them absent a protective order. The Court entered a HIPAA-compliant protective order for this case in May, which protects patient identities from public disclosure. Dkt. #21. Despite this, Defendants have refused to remove their prior redactions of consumer names and email addresses from these key documents. Defendants' continuing refusal to provide this essential information is interfering with the State's core trial preparation; conveniently for Defendants, it prevents the State from identifying and interviewing ***the most relevant witnesses in this case***. Contrary to Defendants' purported concerns for patient privacy, the State does not seek any information about the medical services patients received—indeed, the NDAs and other communications at issue do not reveal that information and the State has no objection to wholesale redactions concerning each patient's specific medical procedure.

---

[1] In May, this Court held that the *least* restrictive version of Defendants' pre-service NDAs "could *easily* be construed . . . as prohibiting or restricting the ability of a consumer to communicate a negative review of Defendants' business." Dkt. #22 at p. 5 (emphasis added).

[2] This Motion is limited to Defendants' redactions to approximately 200 post-service NDAs and approximately 300 other documents that expressly refer or relate to consumer complaints, pre-service NDAs, and/or post-service NDAs.

STATE'S MOTION TO COMPEL PRODUCTION OF
CONSUMER NAMES AND EMAIL ADDRESSES IN
KEY DOCUMENTS - 1
(2:22-cv-01835-RSM)

1    The State has a compelling need for this information and there is no legal justification for

2    Defendants' continuing refusal to provide it. Accordingly, the State respectfully requests that the

3    Court order Defendants to produce responsive documents without redacting consumer names and

4    email, and to award the State its fees for having to bring this Motion.

## II.    BACKGROUND

### A.    Allure Redacted All Consumer Names and Email Addresses from Key Documents, Preventing the State from Obtaining Consumer Evidence

The State alleges that Defendants Alderwood Surgical Center, LLC, Northwest Nasal Sinus Center P.S., and Javad A. Sajan, M.D. (collectively Allure Esthetic, or Allure) systematically suppressed negative reviews by using form NDAs that restricted patients from posting negative reviews, in violation of the CRFA, 15 U.S.C. § 45b, and the Washington Consumer Protection Act (CPA), RCW § 19.86. *See* Dkt. #1 at pp. 2-4, ¶¶ 6-15. Allure required over 10,000 patients, before receiving services, to sign a pre-service NDA that restricted them from posting truthful reviews about their experiences. *Id.* at pp. 3, 7-10, ¶¶ 7, 46-48 & Ex. A-C. From August 2017 to January 2019, Allure also required patients to agree that if they did post a negative review, Allure could unilaterally reveal the patient's protected health information (PHI) when responding to the review. *Id.* at pp. 3, 9-10, ¶¶ 8, 46-47 & Ex. A-B.

When patients posted negative reviews in violation of Allure's pre-service NDAs, Allure used those NDAs—and the threat, or implied threat, of taking legal action to enforce them—to coerce patients into taking down the negative reviews. *Id.* at p. 3, ¶ 9. If those efforts failed, Allure offered patients cash, free services, or other incentives "to make things right" if they signed a second, post-service NDA. *Id.* at pp. 3, 13, ¶¶ 10-12, 63-67 & Ex. D. The post-service NDA required patients to remove their negative reviews and prohibited them from posting negative reviews or ever discussing Allure's business with anyone in the future. *Id.* The State requested the roughly 200 post-service NDAs and related correspondence in discovery; Allure unilaterally redacted all consumer names and email addresses from the documents.

STATE'S MOTION TO COMPEL PRODUCTION OF CONSUMER NAMES AND EMAIL ADDRESSES IN KEY DOCUMENTS - 2 (2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON Consumer Protection Division 800 Fifth Avenue, Suite 2000 Seattle, WA 98104-3188 (206) 464-7744

1       Allure's discovery conduct is obstructing the State's trial preparation. Meanwhile, Allure

2   has criticized the State to this Court for not identifying more consumer witnesses, implying that

3   there aren't any and that the State is relying excessively on former employees to establish its case.

4   *See* Dkt. #30 at p. 31 ("although this is supposedly a consumer protection investigation, the

5   overwhelming majority of individuals interviewed by the [Attorney General's Office] (75%) during

6   its investigation were former employees, not patients or consumers"). This is a red herring: there is

7   ample consumer testimony supporting the State's NDA-related claims from Allure patients who

8   filed complaints with the Attorney General's Office (AGO). *See* Declaration of Matthew

9   Geyman in Support of State's Motion to Compel Production of Consumer Names and Email

10  Addresses in Key Documents (Geyman Decl.), Ex. A-G (Declaration of Sacha Faust

11  (Oct. 26, 2021), ¶¶ 5-12 & Ex. A-D; Declaration of Cynthia Tamlyn (Nov. 4, 2021), ¶¶ 3-8 &

12  Ex. A-B; Declaration of Rachel Kahl (Nov. 24, 2021), ¶¶ 7 & 14; Declaration of Victoria Hester

13  (Jan. 26, 2022), ¶¶ 5-7, 11-13, & Ex. A-D; Declaration of David Lundin (June 13, 2023), ¶¶ 7-8, 22

14  & Ex. A-B; Declaration of Alexia Holeso (July 1, 2023), ¶¶ 5-15 & Ex. A-C; and Declaration of

15  Mina Hogan (July 5, 2023), ¶¶ 3, 5-13, & Ex. A-D, describing Allure's use of pre-service and/or

16  post-service NDAs to restrict consumer reviews). Once Allure identifies the consumers named in

17  its post-service NDA, internal emails, and communications to and from patients regarding specific

18  patient complaints, pre-service NDAs and/or post-service NDAs, there are likely to be many, many

19  more consumers with testimony to provide to the Court.

20  **B.**    **The State Has a Well-Founded Basis to Believe the Discovery Requested Will Lead**

21         **Directly to Damning Evidence**

22      Excerpts from Allure's internal emails discussing negative patient reviews and its efforts

23  to obtain post-service NDAs from those consumers demonstrates the nature of this evidence and

24  the relevance of potential consumer testimony:

25      [Consumer's name redacted] is scheduled with you on Tue [date redacted]. This is

26      a patient who previously posted a neg review online. She was upset because she

STATE'S MOTION TO COMPEL PRODUCTION OF
CONSUMER NAMES AND EMAIL ADDRESSES IN
KEY DOCUMENTS - 3
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

requested a specific filler and when she came back a month later for her appointment, we didn't have the requested filler set aside so she did not get treated and left upset. She agreed to remove the review and to sign the non-disclosure form for us once we offered her a $300 credit towards lip filler.[3]

\*\*\*

[Consumer's name redacted, different consumer] – Posted a review on Allure Yelp, currently has settlement agreement for refund . . .[4]

\*\*\*

[Consumer's name redacted, different consumer] – Dr. Jonov pt. left negative reviews online (all over) has deleted some, but has an agreement to receive 10 vials of Sculptra at no cost, must remove all reviews . . .[5]

\*\*\*

[Consumer's name redacted, different consumer] – Posted a negative review on Gallery (Sajan pt) d/t appointment location mix up. Has updated to 5 stars, but still needs to sign the settlement agreement. Her man [name redacted] I feel should also sign it. Just because I wouldn't put it past him to go and leave a Google review too . . .[6]

Allure redacted the consumer names from all of its nearly two hundred post-service NDAs, each of which required the consumers to remove all negative reviews previously posted and to refrain from posting any negative reviews or otherwise disclosing negative information about Allure's practices to anyone in the future. *See* Geyman Decl., Ex. J (ASC002407, post-service NDA, consumer's name redacted, requiring consumer to "remove and delete any and all" negative reviews and refrain from posting any negative reviews in the future, attaching copy of consumer's one-star review of Allure stating "Creams do not work and are expensive"). Yet at the same time, in its answer, Allure **denies** that the post-service NDAs are "form contracts"

---

[3] *See* Geyman Decl., Ex. H (ASC003521, 9/6/19 internal email, consumer's name redacted).

[4] *Id.*, Ex. I (ASC004049, 12/26/18 internal email titled "Pending complaints," multiple consumers' names redacted).

[5] *Id.*

[6] *Id.*

STATE'S MOTION TO COMPEL PRODUCTION OF
CONSUMER NAMES AND EMAIL ADDRESSES IN
KEY DOCUMENTS - 4
(2:22-cv-01835-RSM)

under the CRFA, and, going one step farther, affirmatively alleges that they are **not** "form contracts." *See* Dkt. #30 at p. 23, ¶ 150 & p. 36, ¶ 15. Thus, Allure affirmatively contends that its post-service NDAs are **not** "form contracts" while at the same time preventing the State from contacting the consumers who signed the post-service NDAs to establish that the post-service NDAs **are** form contracts that were not meaningfully negotiated.

By redacting the consumer names and email addresses in these documents, Allure has also prevented the State from gathering consumer testimony showing how Allure enforced its pre-service and post-service NDAs—to prevent negative reviews and coerce consumers into taking down negative reviews. Again, this is shown by reviewing a sampling of the redacted documents themselves. In one case, after a consumer posted a negative review on Yelp, Allure's in-house counsel sent a letter to the consumer threatening to sue her for violating the NDA if she did not immediately remove all negative reviews:

> Dear Ms. [consumer's name redacted] . . . [P]er the Online Reputation Agreement, you agreed that if you were unhappy with the care [or] services provided, you would first notify Dr. Jonov's office so that he could reach an amicable resolution. You have not abided by the terms of the Agreement . . . Accordingly, please remove any and all online reviews of Dr. Jonov and The Gallery of Cosmetic Surgery, and send written notice . . . that you will discontinue posting within ten (10) days . . .[7]

In response to that letter, the consumer replied by email:

> Thanks Sarah! Unfortunately my statements weren't false, and what you've described in this letter is not an accurate description of what I was told at my appointment or what I said. I don't need to waste my time arguing your points individually, as they are all inaccurate. I will be posting this letter to Yelp though, so everyone can see what you do to try to intimidate people who honestly report their negative experiences.[8]

In another letter, Allure's in-house counsel wrote to another consumer whose name and email address were redacted in the document, and stated:

---

[7] *Id.*, Ex. K (ASC003604).

[8] *Id.*, Ex. L (ASC000868).

Dear [consumer's name and email address redacted]: . . . We have been provided a copy of the Yelp.com review you submitted under screen name "[consumer's name redacted]." We also understand that you have acknowledged to Allure Esthetic that you did in fact post the review on Yelp.com . . . [A]s part of the [post-service NDA] you agreed to "remove and delete any and all information related to Confidential Matters defined herein posted on internet platforms (including but not limited to Facebook, Instagram, LinkedIn, SnapChat, Yelp, Google, and Twitter.)" In light of this, we demand that you immediately remove your Yelp.com review and cease and desist from posting any further reviews on any Internet platform . . . [U]nder [the post-service NDA], you have agreed to pay Allure Esthetic $250,000 or $10,000 per day that you remain in breach . . . [Y]our failure to uphold these covenants will leave Allure Esthetic no alternative but to pursue injunctive relief to remove your Yelp.com review and a claim for damages . . .[9]

To give another example, Allure's in-house counsel wrote to a consumer and stated:

Dear [consumer's name and email address redacted]: . . . We have been provided a copy of the Google.com review you submitted under screen name "[consumer's name redacted].". . . [I]t is a violation of the [post-service NDA] for you to disclose or publish details "arising out of any and all medical care, medical advice, office visits, phone conversations, payment, treatment, injection, surgery, and/or diagnosis" resulting from your interactions with Allure Esthetic through any medium, including Google.com. Furthermore, as part of the [post-service NDA] you agreed to "remove and delete any and all information related to Confidential Matters defined herein posted on internet platforms (including but not limited to Facebook, Instagram, LinkedIn, SnapChat, Yelp, Google, and Twitter)." In light of this, we demand that you *immediately remove your Google.com review* and cease and desist from posting any further reviews on any Internet platform . . . [U]nder [the post-service NDA], you have agreed to pay Allure Esthetic $250,000 or $10,000 per day that you remain in breach . . . Again, we demand that you immediately remove your Google.com review. If you choose not to comply . . . this letter serves as notice to you that Allure Esthetic fully intends to pursue a claim for damages . . .[10]

All of these consumers have firsthand knowledge and experience with Allure's enforcement of NDAs and can testify about how Allure used the NDAs to intimidate them and try to coerce them into removing negative reviews.

Finally, to the extent that Allure and its staff made threats, or implied threats, to enforce its NDAs through telephone calls to consumers after they posted negative reviews (and not just

---

[9] *Id.*, Ex. M (ASC000004).

[10] *Id.*, Ex. N (ASC000014).

STATE'S MOTION TO COMPEL PRODUCTION OF
CONSUMER NAMES AND EMAIL ADDRESSES IN
KEY DOCUMENTS - 6
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

in threat letters such as the ones above), the names and email addresses of the consumers identified in the post-service NDAs and Allure's other NDA-related communications are an invaluable source for the State to seek additional consumer testimony regarding the nature of those telephone calls. As one of Allure's former employees explained in a declaration:

> I worked for Allure from December 2019 to February 2021 as a Patient Care Coordinator . . . [¶] My job responsibilities included checking patients in and out, scheduling, and many other patient-related tasks. [¶] As part of the check-in process every patients was given a stack of intake forms, including a form that talked about not posting negative reviews. Allure required every patient to sign all the forms in the stack, including the form about not posting negative reviews. We were instructed to tell them if they didn't complete and sign all the forms they were not allowed to see the doctor . . . [¶] There were times when a patient disregarded the form and posted a negative review anyway. . . I would hear Sabrina [Defendants' CEO] or Gricelda [Defendants' Chief Operating Officer] placing calls to those patients and asking them to take the review down. If that wasn't effective, Sabrina or Gricelda would offer the patient money to take down the review. It that wouldn't work they would remind the patient that the form they signed was legally binding. They would say things like "our legal staff has reviewed the document" or "we will be forced to take legal action."[11]

Similarly, a consumer who posted negative reviews on Google and Yelp described the phone call she then received from Allure's officer manager, in which Allure tried to use the pre-service NDA to force her to take down the negative reviews, and threatened legal consequences if she did not do so:

> On February 22, 2021, I posted [one star] reviews on Google and Yelp describing my experience with Allure Esthetic and Dr. Sajan. . . [¶] Within hours of posting the reviews I received a call from Allure Esthetic's office manager asking me to take them down. When I told them I would not, she indicated there would be legal consequences if I refused since I had signed a non-disclosure agreement.[12]

Again, without the names and email addresses of the consumers identified in the post-service NDAs and these other NDA-related communications, the State cannot obtain testimony and other evidence

---

[11] Id., Ex. O (Declaration of Shailyn Berry (June 12, 2023), ¶¶ 2, 5 & 8 (emphasis added).

[12] Id., Ex. D (Declaration of Victoria Hester (Jan. 26, 2022), ¶¶ 11-12 (emphasis added).

1  from these affected consumers about the contents of these telephone calls in which Allure tried to

2  use the NDAs to remove or suppress negative reviews.

3  **C.      Allure Has Effectively Stalled the State's Discovery Efforts for Months**

4        The State requested the documents now at issue in April 2023 in its Requests for

5  Production Nos. 1, 2 and 10, and Interrogatory No. 11, to which Allure responded in pertinent

6  part as follows:

7     **INTERROGATORY NO. 11:** Identify all persons who signed the Post-Service
      NDA containing the provision entitled "Non-Disclosure Agreement" that appears
8     on page 2 (attached as Exhibit D to the Complaint, ASC003304), and for each of
      those persons, when they signed the Post-Service NDA.
9

10    **ANSWER**: Objection. This Interrogatory is overly broad, unduly burdensome, and
      not reasonably calculated to lead to the discovery of admissible evidence. Further,
11    it seeks Protected Health Information ("PHI") for patients of the Defendants.
      Accordingly, <u>no PHI will be disclosed absent the entry of a protective order by the</u>
12    <u>Court</u> and a showing of good cause . . .

13                                    ***

14    **REQUEST FOR PRODUCTION NO. 1:** Produce all Documents,
      Communications, and ESI relating to Your NDAs and any other steps You took in
15    advance to try to prevent, discourage, or restrict patients or consumers from posting
      negative Consumer Reviews about You, including all Documents,
16    Communications, and ESI sent to or received from Your patients, consumers,
      employees, attorneys, RealDrSeattle, or any other person or entity relating to those
17    efforts.

18    **RESPONSE**: Objection. . . This Request is overly broad, unduly burdensome, and
      seeks information protected by the attorney-client privilege and work product.
19    Further, it seeks Protected Health Information ("PHI") for patients of the
      Defendants. Accordingly, <u>no PHI will be disclosed absent the entry of a protective</u>
20    <u>order by the Court</u> and a showing of good cause . . .
21

22                                    ***
      **REQUEST FOR PRODUCTION NO. 2:** Produce all Documents,
23    Communications, and ESI relating to any steps You took to remove negative
      Consumer Reviews that particular consumers or patients had posted relating to
24    You, including all Documents, Communications, and ESI sent to or received from
      Your patients, consumers, employees, attorneys, Yelp, Google, Healthgrades,
25    RateMDs, RealSelf, Vitals, any other review site, RealDrSeattle, or any other
      person or entity relating to those efforts.
26

STATE'S MOTION TO COMPEL PRODUCTION OF
CONSUMER NAMES AND EMAIL ADDRESSES IN
KEY DOCUMENTS - 8
(2:22-cv-01835-RSM)

**RESPONSE**: Objection. . . This Request is overly broad, unduly burdensome, and seeks information protected by the attorney-client privilege and work product. Further, it seeks Protected Health Information ("PHI") for patients of the Defendants. Accordingly, <u>no PHI will be disclosed absent the entry of a protective order by the Court</u> and a showing of good cause . . .

\*\*\*

**REQUEST FOR PRODUCTION NO. 10:** Produce all Post-Service NDAs signed by Your patients and any other consumers of Your services or goods at any time, along with all Documents, Communications, and ESI You sent to or received from those patients or consumers about the Post-Service NDAs before or after they signed them.

**RESPONSE**: Objection. . . This Request is overly broad and unduly burdensome. Furthermore, it is vague and ambiguous to the extent a meaningful distinction between "patients" or "consumers" is intended. This Request also seeks Protected Health Information ("PHI") for patients of the Defendants. Accordingly, <u>no PHI will be disclosed absent the entry of a protective order by the Court</u> and a showing of good cause . . .

Geyman Decl., Ex. P (State's First Interrogatories and Requests for Production to Defendants, with Answers and Responses Thereto, dated May 8, 2023) (emphasis added).

**D.     The Court Entered a HIPAA-Compliant Protective Order that Resolves Defendants' Prior Objections Regarding the Need for a Protective Order**

On May 11, 2023, after Allure provided the State with its discovery responses and objections above, the Court entered a HIPAA-compliant protective order which expressly protects all "Confidential" material produced in discovery, including—at Allure's specific request—all "Health Care Information and Protected Health Information and any other information that is protected by RCW 70.02 et seq. and/or HIPAA." *See* Dkt. #21 at pp. 2 & 4, ¶¶ 2, 3, 4, 7.3 & 7.4.

**E.     Despite the State's Good Faith Efforts, It Was Unable to Resolve this Discovery Dispute, Thus Requiring this Motion**

The parties made good faith efforts to resolve this discovery dispute and met and conferred to try to resolve it, but they were unsuccessful. *See* Geyman Decl., ¶¶ 18-22 & Ex. Q-S.

STATE'S MOTION TO COMPEL PRODUCTION OF
CONSUMER NAMES AND EMAIL ADDRESSES IN
KEY DOCUMENTS - 9
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Accordingly, pursuant to Fed. R. Civ. P. 37(a), the State brings this Motion.

2                               **III.    ARGUMENT**

3              Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery

4    regarding any nonprivileged matter that is relevant to any party's claim or defense and

5    proportional to the needs of the case, considering the importance of the issues at stake in the

6    action, the amount in controversy, the parties' relative access to relevant information, the parties'

7    resources, the importance of the discovery in resolving the issues, and whether the burden or

8    expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Under

9    this standard, "the scope of discovery is broad." *Wagafe v. Trump*, 334 F.R.D. 619, 622

10   (W.D. Wash. 2020). Here, the Court should require Allure to produce these responsive

11   documents without redacting consumer names and emails because the State has a compelling

12   need for this highly relevant consumer testimony and evidence that it cannot obtain from other

13   sources, the information is not privileged, and it will be fully covered and protected by the

14   HIPAA-compliant protective order in this case.

15             Federal courts have consistently held that patient names and email addresses are

16   discoverable and should be produced where, as here, the requesting party shows a compelling

17   need for the information and the information will be protected by an adequate protective order.

18   *See, e.g.*, *Artis v. Deere & Co.*, 276 F.R.D. 348, 353 (N.D. Cal. 2011) (distinguishing patient

19   "names, addresses, and phone numbers" from "those more intimate privacy interests such as

20   compelled disclosure of medical records and personal histories," and ordering production of

21   patient names and contact information subject to a protective order); *Kelley v. Colonial Penn*

22   *Life Ins. Co.*, No. CV 20-3348, 2022 WL 19403870, *2 (C.D. Cal. May 19, 2022) (same, citing

23   *Artis*); *M.J. v. District of Columbia*, No. 18-cv-01901, 2020 WL 13668559, *6-8

24   (D.D.C. July 1, 2020) (same, citing *Artis* and other cases). Here, likewise, the Court should

25   require Allure to remove the redactions and produce these consumer names and email addresses

26   subject to the protective order in this case.

STATE'S MOTION TO COMPEL PRODUCTION OF
CONSUMER NAMES AND EMAIL ADDRESSES IN
KEY DOCUMENTS - 10
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Allure has argued that these consumer names and email addresses should be separately
2    protected under Washington's state PHI statute, RCW 70.02. State PHI laws, however, cannot
3    be used to impose more stringent discovery requirements in a federal court action, such as this
4    one, that is based on federal question jurisdiction and seeks to enforce federal law. *See Nw.*
5    *Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004) ("The enforcement of federal law
6    might be hamstrung if state-law privileges more stringent than any federal privilege regarding
7    medical records were applicable to all federal cases"); *Williams v. City of Philadelphia*,
8    No. 08-1979, 2104 WL 5393988, *5-6 (E.D. Penn. Oct. 22, 2014) (noting that "a majority of
9    courts have concluded that HIPAA does not incorporate state statutes with stricter confidentiality
10   provisions for the purpose of litigation in federal court when jurisdiction is based on a federal
11   question," citing *Nw. Mem'l Hosp*. and other cases, ordering production of patient names subject
12   to "an appropriate protective order"). *See also* 75 *Federal Register* 40868, at 40874-75,
13   2010 WL 2753611 (July 14, 2010) (final HIPAA rules, stating "we take this opportunity to make
14   clear that neither the HIPAA statute nor its implementing regulations give effect to State
15   physician-patient privilege laws or provisions of State law relating to the privacy of individually
16   identifiable health information for use in Federal court proceedings"). Thus, Allure's reliance on
17   the State PHI statute is unavailing.
18   //
19   //
20   //
21   //
22   //
23   //
24   //
25   //
26   //

STATE'S MOTION TO COMPEL PRODUCTION OF
CONSUMER NAMES AND EMAIL ADDRESSES IN
KEY DOCUMENTS - 11
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

## IV.    CONCLUSION

2    For the foregoing reasons, the State respectfully requests that Allure be ordered (1) to

3 produce the consumer names and email addresses in the post-service NDAs, internal emails, and

4 emails and other correspondence with consumers relating to specific negative reviews and/or

5 relating to pre-service and/or post-service NDAs in response to the State's RFPs Nos. 1, 2 and

6 10, and (2) to identify by name and email address all consumers who signed its post-service

7 NDAs, in response to the State's Interrogatory No. 11. The State requests its fees for this motion.

8    DATED this 7th day of September, 2023.

9                                    ROBERT W. FERGUSON
                                     Attorney General
10

11                                   /s Matthew Geyman
12                                   MATTHEW GEYMAN, WSBA #17544
                                     CAMILLE M. MCDORMAN, WSBA #53036
13                                   ZORBA LESLIE, WSBA #58523
                                     Assistant Attorneys General
14                                   Attorneys for Plaintiff State of Washington
                                     800 Fifth Avenue, Suite 2000
15                                   Seattle, WA 98104

16

17                                   *I certify that this memorandum contains 4,020
                                     words, in compliance with the Local Civil
18                                   Rules.*

19

20

21

22

23

24

25

26

STATE'S MOTION TO COMPEL PRODUCTION OF
CONSUMER NAMES AND EMAIL ADDRESSES IN
KEY DOCUMENTS - 12
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## **CERTIFICATE OF SERVICE**

I certify under penalty of perjury under the laws of the State of Washington that I caused

a copy of the foregoing to be served on all counsel of record via the ECF system.

DATED this 7th day of September, 2023, at Seattle, Washington.

*/s Matthew Geyman*

MATTHEW GEYMAN
Assistant Attorney General

STATE'S MOTION TO COMPEL PRODUCTION OF
CONSUMER NAMES AND EMAIL ADDRESSES IN
KEY DOCUMENTS - 13
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744