The Honorable Ricardo S. Martinez

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 2:22-cv-01835-RSM |
| Plaintiff, | STATE'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF CONSUMER NAMES AND EMAIL ADDRESSES IN KEY DOCUMENTS |
| v. | |
| ALDERWOOD SURGICAL CENTER, LLC, a Washington limited liability company; NORTHWEST NASAL SINUS CENTER P.S., a Washington professional service corporation; and JAVAD A. SAJAN, M.D., | NOTE ON MOTION CALENDAR: Friday, September 22, 2023 |
| Defendants. | |

## I.      INTRODUCTION

The State's motion is narrowly focused and limited to the consumer names and email addresses that Defendants (collectively, Allure) unilaterally redacted from a discrete and narrowly defined set of non-disclosure agreements (NDAs) and related key documents. These NDAs were signed by consumers who voiced complaints to Allure and/or posted negative reviews. The State does ***not*** seek medical treatment information, which will all remain redacted, and the documents will be subject to the protective order. Dkt. #21. Allure's strident opposition to disclosing the identity of these core witnesses is particularly ironic, given that many of

1   Allure's NDAs required its patients to **waive** HIPAA protections if they posted negative reviews.

2   Dkt. #35, pp. 3-4; Dkt. #36-3; Dkt. #36-4.

3       Allure does not dispute the relevance of this information—yet it has prevented the State

4   from contacting these core witnesses for the past two years. The State is entitled to this discovery:

5   Allure's threats and other communications with consumers relating to the NDAs and how Allure

6   used the NDAs to restrict reviews is one of the most critical issues in this case. The State has

7   shown good cause for requiring Allure to reveal the consumer names and email address in these

8   key documents, and respectfully asks the Court to grant this motion.

9                               **II.    REPLY**

10  **A.    The State's Motion Is Limited to the Consumer Names and Email Addresses
        in a Discrete and Narrowly Defined Universe of Highly Relevant Documents**

11

12      Allure spuriously asserts that the State "seeks the information so its employees can

13  intrude on these patients' privacy and question them about their medical experiences." *See*

14  Dkt. #37, p. 2. Not so. This motion is limited to several hundred post-service NDAs, internal

15  emails, and emails and letters to and from patients. These documents are of key evidence of

16  Allure's systematic suppression of negative reviews through its responses to consumer

17  complaints, negative reviews, and use of post-service NDAs. *See* Dkt. #31, pp. 1-8;

18  Dkt. #32-17, pp. 1-3, 8-87, 96-103. Again, the State does **not** seek medical treatment

19  information; it only seeks the names and email addresses of these consumer witnesses that Allure

20  has kept hidden. *Id.*

21      The State has provided myriad examples demonstrating the compelling nature of this

22  evidence and its relevance. *See* Dkt. #31, pp. 3-8; Dkts. #32-8, #32-9, #32-10, #32-11, #32-12,

23  #32-13 & #32-14; *see also* Supplemental Declaration of Matthew Geyman (Geyman Supp.

24  Decl.), Ex. A (internal email from Dr. Sajan, titled "negative review hair transplant," attaching

25  negative review and stating, "We need to find a way to reach out and fix"), Ex. B (post-service

26  NDA, attaching $1,000 check to consumer, stating "Payment in consideration of review

REPLY IN SUPPORT OF MOTION TO
COMPEL PRODUCTION OF CONSUMER
NAMES AND EMAIL ADDRESSES IN KEY
DOCUMENTS
(NO. 2:22-cv-01835-RSM) - 2

1    removal"). Allure cannot dispute the extremely relevant content of these documents, or that these

2    consumers would be key witnesses.

3         In response, Allure conflates the pre-service and post-service NDAs, arguing that "[i]f

4    these documents are indeed impermissible 'form contracts' as the [AGO] has consistently

5    claimed, un-redacted versions are not necessary for the [AGO] to prove its case." Dkt. #37, p. 9.

6    This is not the issue. The State has a pending motion for partial summary judgment regarding

7    the *pre-service* NDAs, *see* Dkt. #35, but it does not cover Allure's use of *post-service* NDAs.

8    Whether the post-service NDAs are "form agreements" under the Consumer Review Fairness

9    Act depends on whether Allure imposed them on consumers "without a meaningful opportunity

10   for such individual[s] to negotiate the standardized terms," 15 U.S.C. § 45b(3)(A)(ii), an

11   allegation Allure **disputes**. *See* Dkt. #30, p. 23, ¶ 150 & p. 36, ¶ 15. Consumer names and emails

12   are essential to obtaining testimony that will prove that Allure did not provide consumers a

13   meaningful opportunity to negotiate this set of NDAs.

14        The evidence the State seeks is also central to its claims under the Consumer Protection

15   Act regarding Allure's unfair and deceptive use of *both* types of NDAs, both pre- and post-

16   service, to restrict patients from posting negative reviews or, if that did not succeed, to threaten

17   or coerce them to remove negative reviews once posted. *See* Dkt. #1, p. 2-4, ¶¶ 6-15, and

18   pp. 29-30, ¶ 175(a)-(d). As Allure certainly knows, without the opportunity to speak to the

19   consumers named in these key documents, the State cannot develop the evidence to support these

20   claims. *See* Dkt. #1, p. 3, ¶¶ 10-12, and p. 13, ¶¶ 63-67.

21        Allure suggests that if consumers wished to speak to the State, they would have reached

22   out to the State following the public announcement of this case. Dkt. #37, p. 9. ***But Allure's***

23   ***systematic use of NDAs created an environment where its patients believe they will face severe***

24   ***penalties for speaking the truth***. *See, e.g.*, Dkt. #34-1, pp. 4, 6-17; Dkt. #34-4, pp. 3-4, 10-17;

25   Dkt. #36-2, pp. 2-3, ¶¶ 4-7; Dkt. #36-7, pp. 3-4, ¶¶ 5-11; Geyman Supp. Decl., Ex. C (Declaration

26   of Ash Navone) (Navone Decl.) (Sept. 14, 2023), ¶¶ 4, 12-16; *id*, Ex. D (Declaration of Shieliene

REPLY IN SUPPORT OF MOTION TO
COMPEL PRODUCTION OF CONSUMER
NAMES AND EMAIL ADDRESSES IN KEY
DOCUMENTS
(NO. 2:22-cv-01835-RSM) - 3

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   Raines) (Raines Decl.) (Sept. 19, 2023), ¶¶ 5-15. Allure also provides no basis for its assumption

2   that its patients and former patients know about this case. To the contrary, a number of consumers

3   have told the State they had no idea about this case until they learned of it recently by other

4   means. *See, e.g.*, *id*., Ex. C, Navone Decl., ¶ 17; *id*., Ex. D, Raines Decl., ¶¶ 19-20.

5   **B.      The State Has Established Good Cause to Require Disclosure of Consumer
           Names and Email Addresses in these Key Documents**

6

7          Allure does not dispute that the protective order, Dkt. #21, will protect the consumer

8   names and email addresses at issue from public disclosure. And it admits that the only question

9   for the Court is whether the State has shown good cause for obtaining this highly relevant

10  information. *See* Dkt. #31, pp. 8-9; Dkt. #32-16 (Allure's discovery responses, stating "no PHI

11  will be disclosed absent entry of a protective order by the Court and a showing of good cause.").

12  Because the State has shown good cause, the motion should be granted.

13         Allure also does not dispute that federal courts have regularly held that individuals'

14  contact information is discoverable and may be produced where the requesting party shows good

15  cause for obtaining it and it will be protected by an adequate protective order. *See* Dkt. #31, p.

16  11 (citing cases). Allure further concedes this is a balancing test, weighing the need for the

17  discovery against the privacy interest. *See* Dkt. #37, p. 8; *see also Fryer v. Brown*,

18  No. C04-5481, 2005 WL 1677940, *5-7 (W.D. Wash. July 15, 2005) (laying out basic standard

19  for balancing privacy with need for information, holding that need outweighed privacy interest).

20  It is a case-by-case determination, at the Court's discretion.

21         Thus, where the need for the discovery outweighs the potential intrusion, discovery

22  should be granted. This is *especially* true when the entity requesting contact information seeks

23  to vindicate the rights of those very individuals. *See M.J. v. District of Columbia*,

24  No. 18-cv-01901, 2020 WL 13668559, at *6-8 (D.D.C. July 1, 2020) (reasoning that plaintiff's

25  role as an advocacy organization "empowered under federal statutes" to protect the rights at issue

26  weighed in favor of compelling disclosure of contact information); *FTC v. Amazon.com, Inc.*,

REPLY IN SUPPORT OF MOTION TO
COMPEL PRODUCTION OF CONSUMER
NAMES AND EMAIL ADDRESSES IN KEY
DOCUMENTS
(NO. 2:22-cv-01835-RSM) - 4

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  No. C14-1038, 2015 WL 11256312, at *3 (W.D. Wash. Aug. 3, 2015) (granting request to

2  compel Amazon to produce customer contact information, reasoning that FTC's use of the

3  information to contact potentially injured customers was "consistent with the FTC's role as a

4  consumer protection agency").

5        Here, as in other similar cases, the State's need for the consumer names and email

6  addresses in these key documents, when protected by the protective order and after redacting

7  any medical treatment information, outweighs the limited intrusion of disclosing the names and

8  email addresses. *See Artis v. Deere & Co*., 276 F.R.D. 348, 353 (N.D. Cal. 2011) (distinguishing

9  limited privacy interest in "names, addresses, and phone numbers" from "more intimate privacy

10  interests such as compelled disclosure of medical records and personal histories"); *M.J. v.*

11  *District of Columbia*, 2020 WL 13668559, at *6-8 (ordering disclosure of contact information

12  for children and their guardians relating to mental health information, holding that need for class

13  discovery outweighed privacy interests); *Washington v. Matheson Flight Extenders, Inc.*, No.

14  C17-1925-JCC, 2019 WL 1957710, at *3 (W.D. Wash. May 2, 2019) (granting state's motion

15  to compel production of employee documents regarding disability accommodations despite

16  privacy interest in medical records because evidence was highly relevant and important).[1]

17  **C.    Washington's PHI Statute Does Not Bar Disclosure Here**

18        Washington's PHI law does not govern in cases like this one that involve federal claims.

19  Dkt. #31, p. 11; *Microsoft Corp. v. Immersion Corp.*, No. C07-936RSM, 2008 WL 11343462,

20  at *2 (W.D. Wash. Mar. 24, 2008). This rule is rooted in Fed. R. Evid. 501 and the Supremacy

21  Clause. *Id.*; *see also Kalinoski v. Evans*, 377 F. Supp. 2d 136, 140-41 (D.D.C. 2005).

---

24     [1] Allure's reliance on *Wetzel v. CertainTeed Corp.*, No. 16-cv-01160, 2018 WL 9415115, at *3
25  (W.D. Wash. Apr. 19, 2018), *see* Dkt. #37, p. 8 n.25, is misplaced. In *Wetzel*, the court simply held that
it was unnecessary for the defendant to produce unredacted personal identification information of its
26  customers at that early stage of the case, adding that "Plaintiff may raise this issue again during the merits
discovery process." *Id.*

REPLY IN SUPPORT OF MOTION TO
COMPEL PRODUCTION OF CONSUMER
NAMES AND EMAIL ADDRESSES IN KEY
DOCUMENTS
(NO. 2:22-cv-01835-RSM) - 5

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Allure's fleeting argument that the 2013 HIPAA rules render this established rule

2    meaningless, *see* Dkt. #37, p. 11, is wholly unsupported. Allure mistakenly argues that this rule

3    is limited to "unique circumstances." *Id*., p. 12. It ignores the recognition in *Williams* that "a

4    majority of courts have concluded that HIPAA does not incorporate state statutes with stricter

5    confidentiality provisions for the purpose of litigation in federal court when jurisdiction is based

6    on a federal question." *Williams v. City of Philadelphia*, No. 08-1979, 2104 WL 5393988, *5-6

7    (E.D. Penn. Oct. 22, 2014). *See also, e.g.*, *United States v. Slavin*, No. 22-cv-21375,

8    2023 WL 2891161, *3-4 (S.D. Fla. Jan. 15, 2023); *Bach v. Amedisys, Inc.*,

9    No. CV 10-395-BAJ-RLB, 2017 WL 11768429, at *2-4 (M.D. La. Mar. 30, 2017). Further, the

10   Department of Health and Human Services' final HIPAA rules state that "neither the HIPAA

11   statute nor its implementing regulations give effect to . . . provisions of State law relating to the

12   privacy of individually identifiable health information for use in Federal court proceedings."

13   Dkt. #31, p. 11. Allure ignores this definitive statement.

14   **D.     The State's Redaction Errors Are a Red Herring**[2]

15       Allure's extensive discussion of the State's redaction errors in filing this motion only

16   demonstrates how desperately it wants to keep the State from interviewing these witnesses. *See*

17   Dkt. #37, pp. 4, 7-8, 13-14. The State takes very seriously its responsibility to protect

18   confidential information under the protective order and the local rules. The State's redaction

19   mistakes were isolated and immediately corrected. *See* Dkt. #33; Dkt. #34; *see also* Geyman

20

21   _____

     [2] Allure's claim that the State improperly failed to redact documents produced in response to its

22   public records request, *see* Dkt. #37, p. 7, is wrong. Those documents were attachments to consumer
     complaints and were produced in the same form in which they were submitted to the AGO, as required

23   under State public records law. These consumers agreed when they submitted their complaints that the
     complaints and all related documents would become public records under state law and could be disclosed

24   to the public. *See* Geyman Supp. Decl., ¶¶ 6-9 & Ex. E. Likewise, Allure has misled the Court by
     suggesting that the State's investigator threatened a witness. *See* Dkt. #37, p. 8; Dkt. # 38, Ex. D. Allure

25   failed to provide the Court with the subsequent email from that witness to the State's investigator, in
     which that individual apologized for the misunderstanding, stating, "I apologize for misinterpreting the

26   voicemail you left me in regards to being subpoenaed to speak with you or your office. I truly appreciated
     the clarification." Geyman Supp. Decl., Ex. F.

Supp. Decl., ¶¶ 11-21 & Ex. G. The State has reviewed its processes and will make every effort to ensure that such mistakes do not happen again. The State is prepared to provide any further explanation the Court would like on these issues.

### III.   CONCLUSION

For the foregoing reasons, the State has shown good cause for ordering Allure to remove redactions and produce the consumer names and email addresses in the key documents identified in this motion. This motion should be granted.

DATED this 22nd day of September, 2023.

ROBERT W. FERGUSON
Attorney General


s/ *Matthew Geyman*
MATTHEW GEYMAN, WSBA #17544
CAMILLE M. MCDORMAN, WSBA #53036
ZORBA LESLIE, WSBA #58523
Assistant Attorneys General
Attorneys for State of Washington
Attorney General's Office
800 Fifth Avenue, Suite 2000
Seattle, WA 98104

*I certify that this memorandum contains 2,070 words in compliance with the Local Civil Rules.*

REPLY IN SUPPORT OF MOTION TO
COMPEL PRODUCTION OF CONSUMER
NAMES AND EMAIL ADDRESSES IN KEY
DOCUMENTS
(NO. 2:22-cv-01835-RSM) - 7

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

**CERTIFICATE OF SERVICE**

2

I certify under penalty of perjury under the laws of the State of Washington that I caused

3

a copy of the foregoing to be served on all counsel of record via the ECF system.

4

DATED this 22nd day of September, 2023, at Seattle, Washington.

5

6

*s/ Matthew Geyman*
MATTHEW GEYMAN, WSBA #17544
Assistant Attorney General

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPLY IN SUPPORT OF MOTION TO
COMPEL PRODUCTION OF CONSUMER
NAMES AND EMAIL ADDRESSES IN KEY
DOCUMENTS
(NO. 2:22-cv-01835-RSM) - 8

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744