1

2

3

4

5

6

The Honorable Ricardo S. Martinez

7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

8

9

STATE OF WASHINGTON,

NO. 2:22-cv-01835-RSM

10

Plaintiff,

11

v.

STATE'S MOTION FOR
SANCTIONS FOR DEFENDANTS'
DISCOVERY MISCONDUCT

12

ALDERWOOD SURGICAL CENTER, LLC,
a Washington limited liability company;
NORTHWEST NASAL SINUS CENTER
P.S., a Washington professional service
corporation; and JAVAD A. SAJAN, M.D.,

NOTE ON MOTION CALENDAR:
Friday, May 3, 2024

13

14

15

16

Defendants.

17

18

## I.     INTRODUCTION

19

The State brings this Motion to address an emergent discovery issue and respectfully

20

requests that the Court order relief to remedy—to the extent possible—Defendants' willful

21

failure to produce information and documents that conclusively establish allegations at the heart

22

of the State's case. Defendants had knowledge and possession of these critical documents that

23

were responsive to several State discovery requests dating back to the first Civil Investigative

24

Demand (CID) in 2021, but Defendants intentionally withheld them until last week. The State is

25

still evaluating the full impact to its trial preparations of not having these smoking gun

26

documents earlier, but Defendants' willful disregard of their discovery obligations has

1   undeniably prejudiced the State's prosecution of this case. On October 7, 2021, the State issued a

2   CID to Defendant Alderwood Surgical Center, LLC, which was also directed to and encompassed

3   its 100% owner Defendant Javad Sajan M.D. (collectively, Allure). The State enclosed specific

4   Google reviews and directly asked Allure if it was involved in creating them. Allure denied that it

5   was involved in creating ***any*** fake reviews. For the next two and a half years, through multiple

6   rounds of written discovery, Allure and its owner Dr. Sajan denied creating fake reviews and they

7   produced nothing in response to the State's discovery requests on this claim.

8       Eleven days ago, with just over a month left before the discovery cut-off, Allure produced

9   without explanation a set of twenty-five emails between Dr. Sajan and an individual named Saqib

10  Munir spanning a period of six months from December 2015 to May 2016. The emails

11  unequivocally demonstrate that Dr. Sajan wrote fictitious reviews himself, including the same fake

12  reviews the State inquired about in 2021. These emails included 25 fake reviews, most of which are

13  still on the Internet. Dr. Sajan intentionally withheld this critical evidence for two and a half years

14  while simultaneously denying the State's allegations that Allure created fake reviews (*see* Dkt. #30

15  at 15 & 18, denying ¶¶ 85 & 108), denying the State's requests that Allure admit to creating fake

16  reviews, and providing multiple sworn verifications and Rule 26(g) certifications attesting to the

17  truthfulness of Allure's discovery responses.

18      Allure's creation and use of fake reviews to mislead consumers when choosing among

19  competing providers is one of the State's core claims. *See* Complaint, Dkt. #1 at 2, 4, 6-8 & 16-21,

20  ¶¶ 1-2, 16, 29-35 & 84-111. By stonewalling the State on this issue, Allure repeatedly violated its

21  obligations under the Washington CID statute, RCW 19.86.110, and the Federal Rules of Civil

22  Procedure. Defendants' discovery misconduct has had profound consequences for the State's

23  ability to fully prosecute this case: sixteen depositions have been taken without this evidence,

24  the State prepared a dispositive motion on related claims without these materials, the State's

25  expert Dr. Pavlou did not have access to these documents for his report regarding Allure's fake

26  reviews, and it is now likely too late for the State to locate and obtain testimony from Saqib

Munir, the individual Dr. Sajan hired to post the fake reviews via a plethora of fake accounts.

Dr. Sajan and his lawyers have spent the last year and a half personally attacking the Attorney General, asserting without any basis that this case is a witch hunt and a result of a tawdry political *quid pro quo*. Throughout that time, Allure and Dr. Sajan have lied to the State and to this Court about their conduct and intentionally withheld damning evidence proving without a doubt the allegations at the very heart of the State's case. The inexplicable delay in producing these documents, which are core discovery requested from the beginning of this matter and which counsel acknowledges they collected from their client well over six months ago, has greatly prejudiced the State and caused it to expend unnecessary resources.

Accordingly, the State respectfully requests that the Court (1) grant the State leave to allow its expert Paul A. Pavlou, Ph.D. to supplement his report in light of this newly-produced evidence, (2) order that the State's Requests for Admission on this topic shall be deemed admitted, (3) dismiss Allure's purported equitable defense of unclean hands with prejudice, (4) grant monetary sanctions against Allure and its counsel, jointly and severally, in an amount commensurate with the gravity of these discovery violations as determined by the Court, and (5) award the State all costs and fees for the multiple rounds of discovery and motion practice that Defendants' recalcitrance has required.[1]

## II.    FACTUAL BACKGROUND

On April 1, 2024, after concealing this evidence for two and a half years, Allure produced documents conclusively demonstrating that Dr. Sajan **wrote his own fake reviews** and paid a third party to post them on Google's review platform. For example:

- Dr. Sajan asks, "Can you help me with Google Reviews? I can pay $20 per review that sticks for at least 10 days," and Saqib Munir responds, "thanks / ok / send me list of comment to do / let me know one thing it is compulsory to do

---

[1] If additional discovery abuses come to light, the State may ask the Court for further relief, potentially including an independent forensic review of Allure's email accounts at Allure's expense.

them from usa only?," and adds, "please send me more detail to start the task," and Dr. Sajan replies, "I will send you tonight. Do you have skype?" (AE030789);

- Dr. Sajan states, "I have attached the content. Please get this on Google+ link . . . Please do Group 1 first then Group 2. Google reviews are tough. I will raise it to $30 per review you have stick for 10 days." (AE030784-AE030788, attaching 20 fake reviews);

- Dr. Sajan asks, "Any update? Do you have any chat service?," Saqib Munir responds in part, "its only stick if I got the reviews from your specific area's like in USA and from old profiles," and adds, "two reviews are done on today,s [sic] date these are done from original usa profiles form [sic] real people," and Dr. Sajan responds, "Thx!!" (AE30782);

- Dr. Sajan states, "We have an issue. The name on the review does not match name of the profile. . . . Right now it does not match up *and people will think it is fake*." (AE030781);

- Dr. Sajan states, "The google reviews worked. I want to pay you and we would like more uploaded." (AE030778); and

- Dr. Sajan states, "Reviews: Please get these on Google ASAP." (AE030759-AE030760, attaching 5 more fake reviews).

Declaration of Matthew Geyman in Support of State's Motion for Sanctions for Defendants' Discovery Misconduct (Geyman Decl.), Ex. A (emphasis added).[2] This evidence directly contradicts two and a half years of false and misleading discovery responses, including sworn verifications by Dr. Sajan and Sabrina Damani (Allure's CEO and Dr. Sajan's wife) and multiple Rule 26(g) certifications by Allure's counsel.

Indeed, the reviews Dr. Sajan wrote himself and sent to Saqib Munir in these newly-produced emails include the same fake reviews the State attached as Exhibit D to its CID in October 2021. The CID asked whether Allure had any involvement in creating those reviews

---

[2] Many of these fake reviews still appear to this day on Google's review platform as "five star" reviews of Allure and Dr. Sajan. *See, e.g., id.*, Ex. B (Page Vault web captures captured on April 4, 2024, showing reviews by "Lyna Dang," "Jenny Bel," "Kia Andrews," "Randi Lee," "James Johnson," "Tonya Blaine," "Jay Franklin," and "Tabatha Starr" as they appeared on Google reviews on that date).

and, if so, requested production of all related documents. Allure said no and produced nothing. *Compare id.*, Ex. C (10/27/21 CID Rogs 10 & 11 & Ex. D) *with id.*, Ex. D (12/8/21 Response to CID Rogs 10 & 11 stating that Allure "never intentionally or actively sought artificial Google reviews"). In its CID response Allure confirmed that "Dr. Javad Sajan [and] Respondent's counsel Perkins Coie LLP . . . were involved in responding to this Demand." *Id.*, Ex. D (Response to CID Rog 14). This was the first time Allure, and specifically Dr. Sajan, lied to the State about creating the fake reviews.

On September 14, 2022, Allure supplemented its response to CID Rog 11 by acknowledging that its former web designer Matt Russell and an individual named Mohamed Abbas Mohamedtaki "***may*** have obtained reviews" on Allure's behalf, but in response to CID Rog 10, which asked whether Allure created the reviews attached as Exhibit D, Allure said it "lack[ed] sufficient information" to respond. *Id.*, Ex. E. (9/14/22 Supp. Response to CID Rog 10). At the same time, in its supplemental response to CID Rog 10, Allure continued to maintain that Allure "was not involved in writing, creating, soliciting, purchasing, or otherwise causing the reviews identified in Exhibit D to the CID." *Id*. Allure's CEO, Sabrina Damani, verified these CID responses under penalty of perjury. *Id*. This was the second time Allure and Dr. Sajan lied to the State about creating the fake reviews.

On December 29, 2022, when it filed its Complaint, the State alleged that Allure and Dr. Sajan created fake reviews and included two of these same reviews that were included in Exhibit D to the CID as examples. Dkt. #1 at 16 & 20, ¶¶ 85 & 108. In its answer, Allure categorically denied those paragraphs despite Dr. Sajan writing those same fake reviews himself. *Compare* Complaint, Dkt. #1 at 16 & 20, ¶¶ 85 & 108 *with* Answer, Dkt. #10 at 15 & 18, ¶¶ 85 & 108. This was the third time Allure and Dr. Sajan lied to the State about creating the fake reviews, and the first time they lied to this Court.

On April 7, 2023, the State requested this same information in its first set of written discovery requests in the litigation. Rog 5 asked Allure to "[s]tate whether you were involved in

1  writing, creating, purchasing, or otherwise artificially generating Consumer Reviews on Yelp,

2  Google . . . or any other review site," and RFPs 3, 7 and 28 sought additional documents relating

3  to Allure's creation of fake reviews *Id*., Ex. F. In response, Allure simply referred the State to

4  Allure's "prior CID responses." *Id*., Ex. G. Dr. Sajan verified these responses under penalty of

5  perjury, and Allure's counsel certified them under Rule 26(g). *Id*. This was the fourth time Allure

6  and Dr. Sajan lied to the State about creating the fake reviews.

7          On February 23, 2024, the State served requests for admission which again asked Allure

8  to admit that it created fake positive reviews. *Id*., Ex. H. Allure's responses were evasive,

9  dishonest and false. On behalf of Allure the company, it answered:

10
11       **REQUEST FOR ADMISSION 63:** Admit that You artificially created Google
     reviews of Yourself.

12       **RESPONSE:** Defendant Alderwood is ***unable to admit or deny based on a current
13       lack of information known or readily obtainable, after reasonable inquiry.***

14  *Id*., Ex. I. On behalf of himself, Dr. Sajan answered:

15
16       **REQUEST FOR ADMISSION 63:** Admit that You artificially created Google
     reviews of Yourself.

17       **RESPONSE:** Defendant Dr. Sajan admits that he has striven to accurately and
18       honestly portray his businesses to patients. Early on in his career, Dr. Sajan on
     occasion sought assistance from various third parties to amplify his online presence.
19       Upon information and belief, these zealous efforts ***may have resulted*** in the
     development of online reviews. Over the last five years, Defendant Dr. Sajan has
20       undertaken efforts to ensure that online reviews of his businesses are "real," and
     not issued as a consequence [of] any early career efforts. Unless specifically
21       admitted herein, this request is otherwise denied based on lack of sufficient
     knowledge.

22
23  *Id*., Ex. J (emphasis added). This was the fifth time Allure and Dr. Sajan lied to the State about

24  creating the fake reviews.[3]

25
                                     
26       [3] Conspicuously, in contrast to their prior discovery responses, Allure's counsel did not
certify their responses to RFA 63 under Rule 26(g).

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    On April 1, 2024, **six months after collecting these emails** from Dr. Sajan, Allure

2    produced the correspondence between Dr. Sajan and Saqib Munir described above showing

3    Dr. Sajan's creation of these fake reviews. Immediately thereafter, after reviewing these emails,

4    the State wrote to defense counsel objecting to this late-produced discovery. Geyman Decl.

5    Ex. K. The parties held a meet-and-confer on Tuesday, April 9. *Id*., ¶ 16. During the meet-and-

6    confer, defense counsel asserted that: (1) they relied entirely on their clients in responding to the

7    CID; (2) they did not collect Dr. Sajan's personal Gmail account until September 29, 2023, nine

8    months after the State filed its complaint; and (3) they relied on their clients in answering

9    litigation interrogatories and requests for admission, and only reviewed documents that hit on

10   the parties' agreed search terms or that defense counsel were otherwise aware of through the

11   discovery process. *Id*. Last night, counsel sent additional detail regarding their collection and

12   search. *Id*. ¶ 17, Ex. N.

13                            **III.    ARGUMENT**

14   **A.    Legal Standard and Authority for Discovery Sanctions**

15   Federal courts have inherent authority to manage the cases that come before them and

16   issue sanctions for litigation misconduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46

17   (1991) (court has inherent power to assess attorney fees when a party or its counsel "shows bad

18   faith by delaying or disrupting the litigation" or by acting "vexatiously"). The Court's specific

19   power to impose discovery sanctions arises under Rules 26 and 37. Rule 26(g) requires that

20   discovery responses be signed by an attorney who certifies to the best of their knowledge

21   "formed after a **reasonable inquiry**" that each response is "not interposed for any improper

22   purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."

23   Fed. R. Civ. P. 26(g)(1)(B) (emphasis added). "Rule 26(g) is designed to curb discovery abuse

24   by explicitly encouraging the imposition of sanctions." Fed. R. Civ. P. 26(g), Advisory Comm.

25   Notes to 1983 amendment. The certification requirement "obliges each attorney to stop and think

26   about the legitimacy of a discovery . . . response" and serves to deter "evasive" responses that

MOTION FOR SANCTIONS - 7
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

violate "the spirit and purposes of Rules 26 through 37." *Id*. "If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). In addition, Rule 37(c) provides that "[i]f a party fails to admit what is requested under Rule 36 and if the requesting party later proves . . . the matter to be true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof." Fed. R. Civ. P. 37(c)(2).

## B.      The Court Should Sanction Allure and its Counsel

Allure and its counsel's discovery misconduct can appropriately be addressed through sanctions under Rule 26(g). Rule 26(g) requires "sanctions on the signer of a discovery response when the signing of the response is incomplete, evasive or objectively unreasonable under the circumstances." *Aecon Bldgs., Inc. v. Zurich North America*, No. C07-832MJP, 2008 WL 3927797, at *4 (W.D. Wash. Aug. 21, 2008) (citation omitted). An objective standard applies and "the rule requires that the attorney make a reasonable inquiry into the factual basis of his [or her] response." *Id*. Here, neither Allure nor its attorneys—and certainly not Dr. Sajan who was aware of this information all along—made a reasonable inquiry before falsely verifying and certifying—again and again—that Allure's discovery responses were truthful and complete.

Had Allure or its counsel undertaken ***any reasonable inquiry*** for responsive documents and information, they would have discovered that these discovery responses, sworn verifications, and Rule 26(g) certifications were all false. When Dr. Sajan saw the fake reviews he had drafted himself in both the State's CID and Complaint, he knew without any doubt that the State's allegations were true and that he possessed the evidence to prove it. Instead of admitting those facts, he denied the allegations and refused to produce the documents until just last week.

Allure and its counsel also violated their basic obligations to identify and produce relevant information. *See Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, 678 (W.D. Wash. 2014) ("Counsel bear responsibility for coordinating their clients' discovery

MOTION FOR SANCTIONS - 8
(2:22-cv-01835-RSM)

production . . . [and] '. . . must take affirmative steps to monitor compliance so that all sources of discoverable information are searched.'") (quoting *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 435 (S.D.N.Y. 2004)); *Qualcomm, Inc. v. Broadcom Corp.*, No. 05cv1958-B, 2008 WL 66932, at * 9 (S.D. Cal. Jan. 7, 2008), *vacated in part on other grounds*, 2008 WL 638108 ("Attorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search. Producing 1.2 million pages of marginally relevant documents while hiding 46,000 critically important ones does not constitute good faith and does not satisfy either the client's or attorney's discovery obligations. . . . Qualcomm's conduct warrants sanctions").

Dr. Sajan is not a marginal player in this case; he is a named Defendant and the 100% owner of both corporate Defendants. Dr. Sajan is personally and individually responsible for all of the wrongdoing identified by the State. Obviously, Dr. Sajan knew about Saqib Munir because he collaborated with Munir in creating these fake reviews from the outset. Dr. Sajan knew the reviews were fake when he received the State's CID in October 2021 and the State's Complaint in December 2022, both of which attached those same fake reviews. For their part, Allure's counsel had a duty to ensure that Dr. Sajan's email accounts were collected timely and searched for any relevant evidence. Defense counsel cannot hide behind the parties' agreed upon search terms. A simple search for the name "Saqib Munir" would have revealed the smoking gun documents. Dr. Sajan knew about his complicity with Munir from the beginning, and defense counsel were on notice of Munir's role no later than December 22, 2023, when Allure first produced documents to the State showing that Dr. Sajan paid Munir to rig "best of" doctor competitions. Geyman Dec., Ex L (AE021175-AE021179); *see Qualcomm, Inc.*, 2008 WL 66932, at * 11 ("Assuming arguendo, that Qualcomm did not know about the suppressed emails, Qualcomm failed to heed several warning signs that should have alerted it to the fact that its document search and production were inadequate.").

Yet Allure did not produce these documents until at least ***four and a half months later***

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

on April 1, 2024, and even then only after the State sent a specific request on February 23, 2024

asking for "all written or electronic communications on or after January 1, 2015 with the user of

the email address saqibmunir53@gmail.com." *See* Geyman Decl., Ex. M (Allure's 3/29/24

response to the State's 2/23/24 RFP 63). Tellingly, in Allure's response to RFP 63, it noted that

Allure had "already produced responsive emails Bates-labeled AE024396 and AE021175,"

referring to the documents Allure produced on December 22, 2023 showing that Dr. Sajan paid

Saqib Munir to cast fake votes in "best of" doctor competitions. *Id*. Those emails Allure

produced on December 22, 2023 included one in which Dr. Sajan asked Saqib Munir, "Can you

help me with this one [a]gain? *Last time you sent me an excel list with the details*," *id*. at

AE021177 (emphasis added), unmistakably showing that Dr. Sajan and Munir had prior dealings

which were not contained in the emails Allure and its counsel had produced up to that point.

Based on that information, Allure's counsel were required to follow up and gather and produce

these additional documents immediately.

Allure's discovery abuses are "egregious and . . . vitiated the basic tenets of the discovery

process" and warrant sanctions. *Heath v. F/V Zolotoi*, 221 F.R.D. 545, 553 (W.D. Wash. 2004);

*see also Play Visions, Inc. v. Dollar Tree Stores, Inc*., No. C09-1769MJP, 2011 WL 2292326, at

*7 & *10 (June 8, 2011) (assessing $137,168 in sanctions against Play Visions and its counsel

jointly and severally based on "Play Visions's false certifications, inadequate and delayed

responses to RFPs, and counsel's failure to assist and guide the client's production of discovery

responses); *HM Electronics, Inc. v. R.F. Technologies, Inc*., No. 12-cv-2884BAS-MDD,

2015 WL 4714908, at *12-20 & 31 (S.D. Cal. Aug. 7, 2015) (recommending evidentiary and

monetary sanctions in light of party's egregious discovery misconduct), *vacated as moot*

*following settlement*, 171 F. Supp. 3d 1010 (S.D. Cal. 2016).[4]

---

[4] Sanctions are also appropriate under the Court's inherent powers, *see Chambers v. NASCO*, 501 U.S. at 45-46 (discussing court's inherent powers to assess attorney fees when a party or its counsel "shows bad faith by delaying or disrupting the litigation" or by acting

Allure and its counsel engaged in a pattern of discovery delay, deception, and obstruction which prevented the State from obtaining key evidence. While the State is still able to depose Dr. Sajan and confront him with this newly-produced evidence, it is too late for the State to redo the last fourteen months of pre-trial preparations, including sixteen depositions, dozens of consumer declarations, the State's expert's report, and dispositive motions on related issues, all of which occurred without the benefit of these facts. It is also likely too late for the State to locate, subpoena, and depose Saqib Munir, who would otherwise be an important witness regarding Dr. Sajan's misconduct. For all these reasons, the Court should assess both monetary and non-monetary sanctions against Allure and its counsel.

For non-monetary sanctions, the State requests that its expert, Dr. Pavlou, be allowed to supplement his report. The State retained Dr. Pavlou to address the impact that Allure's fake reviews would likely have on consumer welfare. *See* Geyman Decl., ¶ 15. The deadline for completion of expert reports was November 22, 2023, two months after counsel had collected the Sajan documents but months before they were produced. Defendants should not be permitted any advantage from this conduct; Dr. Pavlou should be allowed to address the new documents in a revised report.

In light of this conclusive evidence of Dr. Sajan's creation of fake emails, the State also requests that the State's RFA 63, in which Defendants provided equivocal responses and refused to admit that they created fake Google reviews, be deemed admitted. *See* Geyman Decl., Exs. I & J; *see also* Fed. R. Civ. P. 36(a)(6) ("On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served.").

Further, Allure's affirmative defenses include an equitable defense alleging that "Plaintiff has unclean hands and has committed wrongdoing, and this lawsuit is attempting to benefit from that wrongdoing." Dkt. #30 at 36. These allegations are a baseless distraction[5] and

---

"vexatiously") and under Rule 37(c)(2) and Rule 36 based on Allure's failure to admit that it created fake Google reviews in response to RFA 63.

[5] This Court previously recognized that equitable defenses "are generally unavailable against a governmental entity in a civil action brought to enforce a public right or protect a public

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

should be barred based on Defendants' unclean hands in this litigation. *See Root Refining Co. v. Universal Oil Products Co.*, 169 F.2d 514, 534-35 (3d Cir. 1948) ("No principle is better settled than the maxim that he who comes into equity must come with clean hands and keep them clean throughout the course of the litigation, and that if he violates this rule, he must be denied all relief whatever may have been the merits of his claim."); *U.S. v. Parlavecchio*, 192 F. Supp. 2d 349, 352 (M.D. Pa. 2002) (same, quoting *Root Refining*); *Hall v. Wright*, 125 F. Supp. 269, 273 (S.D. Cal. 1954) (same, quoting *Root Refining*); *see also Aris-Isotoner Gloves, Inc. v. Berkshire Fashions, Inc.*, 792 F. Supp. 969, 970 (S.D.N.Y. 1992), aff'd, 983 F.2d 1048 (2d Cir. 1992) (unclean hands where defendant's president lied under oath); *CCS Communication Control, Inc. v. Sklar*, No. 86-Civ-7191(WCC), 1987 WL 12085, at *3-4 (S.D.N.Y. June 2, 1987) (denying equitable relief to plaintiff who committed perjury). It is within this Court's discretion to dismiss Defendants' purported equitable defense based on Allure's unclean hands in this litigation, particularly after Allure and its counsel have spent the last year and a half arguing to this Court that this whole case is a political witch hunt while actively deceiving the Court and the State by hiding the fact that Allure and Dr. Sajan committed these very same violations of which they are accused.

Finally, the State requests that the Court impose a monetary sanction on Allure and its counsel, jointly and severally, in the amount of $100,000 or such other amount as determined by the Court, commensurate with the gravity of these violations, and award the State its costs and fees for the multiple rounds of unnecessary discovery and motion practice Defendants' discovery violations and recalcitrance have required.

---

interest" and "may be asserted against the government only in extraordinary cases involving 'affirmative misconduct.'" Dkt. #24 at 6 (citing *FTC v. Debt Solutions, Inc.*, No. C06-298 JLR, 2006 WL 2257022, at *1 (W.D. Wash. Aug. 7, 2006), and *United States v. Ruby Co.*, 588 F.2d 697, 703 (9th Cir. 1978)).

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

#### IV.    CONCLUSION

2        The State respectfully requests that the Court grant its motion for sanctions and order the

3   relief described herein.

4        DATED this 12th day of April, 2024.

5                                                    ROBERT W. FERGUSON
                                                     Attorney General
6

7                                                    /s Matthew Geyman
8                                                    MATTHEW GEYMAN, WSBA #17544
                                                     ZORBA LESLIE, WSBA #58523
9                                                    ALEXANDRA KORY, WSBA #49889
                                                     BRET FINKELSTEIN, WSBA #48845
10                                                   BEN BRYSACZ, WSBA #54638
                                                     RABI LAHIRI, WSBA #44214
11                                                   Assistant Attorneys General
                                                     Attorneys for Plaintiff State of Washington
12                                                   800 Fifth Avenue, Suite 2000
                                                     Seattle, WA 98104
13                                                   (206) 464-7744

14

15                                                   *I certify that this memorandum contains 4,197
                                                     words, in compliance with the Local Civil Rules.*
16

17

18

19

20

21

22

23

24

25

26