THE HONORABLE RICARDO S. MARTINEZ

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

STATE OF WASHINGTON,

Plaintiff,

v.

ALDERWOOD SURGICAL CENTER, LLC, a Washington limited liability company; NORTHWEST NASAL SINUS CENTER P.S., a Washington professinal services corporation; and JAVAD A. SAJAN, M.D.,

Defendant.

No. 2:22-cv-01835-RSM

**DEFENDANTS' OPPOSITION TO STATE'S MOTION FOR PROTECTIVE ORDER REGARDING DEFENDANTS' NOTICE OF FRCP 30(B)(6) DEPOSITION**

NOTE ON MOTION CALENDAR
Friday, April 19, 2024

***On April 17, 2024, Defendants' counsel Perkins Coie filed a motion to withdraw as counsel and to temporarily stay all deadlines (Dkt. 102) because the Rules of Professional Conduct require termination of Perkins Coie's representation of Defendants in this litigation. Perkins Coie also requested that the State agree to continue certain deadlines, including the deadline to file the instant Opposition. The State refused to renote its motion for a protective order or agree to extend the deadline to file the instant Opposition. Also on April 17, 2024, Perkins Coie filed a motion pursuant to LCR 7(j) seeking relief from certain deadlines, including the deadline to file the instant Opposition. The Court has not yet decided that motion. Accordingly, Perkins Coie respectfully requests that any substitute counsel engaged by Defendants be permitted to supplement or replace this Opposition and the Court hold any ruling on the States' motion (Dkt. 94) in abeyance until such opportunity has been afforded to substitute counsel.***

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## I. INTRODUCTION

All parties have the right under the Federal Rules of Civil Procedure to develop their evidence so as to present a full and fair presentation of their claims and defenses. Defendants properly noted a Rule 30(b)(6) deposition – nothing out of the ordinary in civil litigation. What is out of the ordinary is the Washington Attorney General's ("WAG") refusal to offer a 30(b)(6) witness on topics directly related to the WAG's claims and Defendants' defenses. The 30(b)(6) topics include innocuous subjects such as the facts underlying WAG's claims, the WAG's investigation of Defendants and the WAG's general investigative practices. The WAG, however, attempts to shield itself from ordinary discovery under a claim that investigation facts and the source of facts uncovered by non-attorney investigators, in some cases, years before litigation is filed are its "work product." In addition, the WAG argues that preparing a witness to testify on a single investigation is overly burdensome, and that Defendants are not entitled to probe the legitimacy and evidence gathered in the WAG's investigation. But Defendants are entitled to probe the WAG's claims against them, and Defendants' defenses, as explained below, are relevant, survived a Motion to Strike, and are well grounded in the evidence. For the reasons described below, the Court should deny Plaintiff's Motion for a Protective Order and order the WAG to prepare a 30(b)(6) witness on the noticed topics.

## II. BACKGROUND

### A. Inquiry into the WAG's Investigation into Defendants Is Warranted Because the WAG's Investigation Deviated Substantially from Its Normal Practices.

The WAG's investigation into Defendants was highly unusual in many ways.

Typically, Consumer Protection Division ("CPD") investigations are triggered by consumer complaints, typically multiple consumer complaints. In one prior instance, the WAG had declined to initiate an investigation into a cosmetic surgery practice because it deemed 10 patient complaints to be too few to warrant investigation. Here, by contrast, not a single patient of Defendants had complained about Defendants when the WAG's investigation began. Declaration

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

of James Sanders in Support of Opposition to Motion for Protective Order at Ex. 2, pp. 83:24-84:11.

Instead, the investigation was initiated by an influential competitor of Defendants, Dr. William Portuese, immediately after Dr. Portuese spoke with and donated to Attorney General Ferguson at a political fundraiser. *Id.* at p. 90:8-24; Ex. 3*;* Ex. 4. The nature of Dr. Portuese's complaint was not the type that would normally trigger an investigation. In fact, Dr. Portuese had previously filed the same complaint anonymously with the Consumer Resource Center ("CRC") of the CPD on May 22, 2019, and it was closed with no action on May 29, 2019. *Id.* at Ex. 5. Yet, within weeks of his meeting and donation to Attorney General Ferguson, the CPD not only opened an investigation, but it determined that litigation was likely, thus supporting its assertion of privilege. See Dkt. #29 at p. 9; 101-2, Ex. I at p. 40.

In discovery, the WAG has argued that these speedy decisions were unrelated to Dr. Portuese's ties to Attorney General Ferguson and instead were due to its determination that Defendants' third pre-service agreement (Exhibit C to the Complaint) was so clearly violative of the law that litigation was obviously apparent. Dkt. #101-2, Ex. I at p. 72. Yet, again, the WAG deviated from its normal procedures. The CPD's primary purpose is to protect consumers. Typically, when the CPD becomes aware that consumers are being harmed by a business's practice, the CPD will take immediate steps to stop the consumer harm, often by reaching out to the business and asking it to stop. *See, e.g.*, Sanders Decl. at Ex. 6 (the WAG receives "tens of thousands" of consumer complaints each year). Had the CPD done that in August 2019, when it first learned Defendants were using Exhibit C, Defendants would have stopped using the agreement immediately. But for reasons that can only be explained through questioning at a Rule 30(b)(6) deposition, the CPD did not. Instead, it stood silently by for another 31 months while Defendants continued to use Exhibit C with their patients.

The first two years of the CPD's investigation were also highly unusual. Although patient harm (or lack thereof) should have been the first area of inquiry, the CPD did not investigate its

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

first patient witness until August 2021. *Id.* at ¶9, Ex. 7. Rather, for the first two years of so of its investigation, the CPD gathered evidence from only one individual, Dr. William Portuese. *See, e.g, id.* at Ex. 1.

The CPD's investigation into Defendants also deviated from its normal practice in other ways. Typically, the CPD defers to the Department of Health, through the Washington Medical Commission, when complaints are made by patients or consumers against physicians. In fact, even today, a visitor seeking to submit a consumer complaint through the WAG's website is directed to submit that complaint to the Department of Health. *See* Help by Topic, Washington State Office of Attorney General, https://www.atg.wa.gov/help-topic#HealthProfessionals (last accessed April 17, 2024).

The CPD's investigation also deviated from normal practices in regards to the motivations underlying the triggering complaints (or in this case, one complaint). Typically, consumers bring complaints because they were harmed in some way and thus seek to redress the harm to themselves and perhaps to seek to prevent other consumers from being harmed. The day after General Ferguson connected Dr. Portuese to Shannon Smith, then Litigation Chief of the CPD, Dr. Portuese wrote to a colleague denigrating Defendants' gender-affirming care patients as "very mentally unstable patients who undergo sex change operations." Sanders Decl. at Ex. 9. Dr. Sajan has performed approximately 1400 gender-affirming surgeries over the past seven years.

The WAG denies Dr. Portuese's importance, but its actions speak more loudly. Defendants' very first interrogatory, served on April 19, 2023, asked the WAG to identify all individuals who provided information during the course of the CPD's investigation. *Id.* at Ex. 11. Although there are more than a dozen emails between July 2019 and July 2021 where Dr. Portuese either provides information or schedules phone calls where he promises to provide information relating to the investigation, *id.* at Ex. 1, the WAG has never disclosed him in response to the interrogatory or in its 14 Rule 26 disclosures. *Id.* at Ex. 12 and 13, And when Defendants deposed Dr. Portuese, six attorneys from the WAG attended the deposition. *Id.* at Ex. 2.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Finally, the CPD's investigation has also used questionable techniques in gathering information from witnesses. The evidence developed in discovery shows that the CPD investigator (or another WAG employee) wrote every declaration signed during the investigation. *See, e.g., id.* at Ex. 17, pp. 48:3-49:15; Ex. 19, p. 8:17-25. The investigator's standard practice was to present the declarations in pdf file format or already-printed copies, which discouraged changes or corrections. *See id.* As a result, every witness who submitted a declaration and who has also provided deposition testimony has identified material false statements or material omissions from the CPD-drafted declarations they were directed to sign. These are just a few examples:

***Victoria Hester*** states in her declaration that she was attracted to Dr. Sajan due to his many five-star reviews. But when questioned under oath, Ms. Hester testified that she had read both positive and negative reviews of Dr. Sajan and they had minimal impact on her decision. The primary reason she chose him was because she had a personal referral from a friend who was a patient of Dr. Sajan. *Compare id.* at Ex. 16, pp. 49:16-50:15, 52:7-53:16, 55:7-13 *with id.* at Ex. 17.

***Chanel Viner*** was the office lead for Defendants for approximately three years. In her declaration, Ms. Viner states that she was trained to put Defendants' pre-service agreements at the end of the patient intake packet, suggesting that this was intentionally done so that patients would be more likely to sign it. But at her deposition, Ms. Viner admitted that Defendants did not even use these agreements when she started her employment and when Defendants later started to use the agreements, there was no training and no instruction on what order to place them in. Ms. Viner's declaration is also notable for what it omitted. At her deposition, Ms. Viner testified that, during her three years of employment with Defendants (2017-2020), most of it as office lead, she never witnessed any fake reviews, photo manipulations, or mishandling of Galderma Aspire points. *Compare id.* at Ex. 18, pp. 23:19-33:6, 39:13-47:3 *with id.* at Ex. 19.

***Irelynd Murphy*** worked for Alderwood for only 3 weeks over May and June of 2020. In her declaration she states that she had workplace conversations with Matt Russell. But Mr. Russell

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

resigned from Alderwood more than a year before Ms. Murphy started. *Compare id.* at Ex. 20 with *id.* at Ex. 21, Ex. 5.

All of the above facts are directly relevant to the WAG's claims, Defendants' defenses. and Defendants' affirmative defenses.

**D. Procedural Background**

On February 27, 2024, Defendants notified the WAG of its intent to notice a 30(b)(6) deposition, and asked the WAG to provide proposed deposition dates. The WAG indicated it would oppose a 30(b)(6) deposition. On February 28, Defendants followed up in writing asking the WAG to provide a deposition date. *Id.* at Ex. 22. The WAG refused to provide a date. On March 11, Defendants served a Rule 30(b)(6) deposition notice for April 3, 2024. *Id.* at Ex. 23. On March 23, 2024, Defendants asked the WAG to confirm that they would make a 30(b)(6) deponent available for April 3. The WAG did not respond, and instead objected to each and every topic. The WAG also demanded Defendants to "withdraw" the notice immediately, claiming that it sought "privileged materials, testimony on irrelevant issues, and a roadmap of [the Consumer Protection Division's] investigation." *Id*. On April 1, 2024, the parties met and conferred regarding the 30(b)(6) notice. During the call, Defendants made clear that they were not seeking "work product" but the facts supporting each allegation and how and when the WAG discovered such facts, and explained the relevance of each of the noticed topics to Plaintiffs' counsel.

Following the meet and confer, Defendants issued an amended notice of deposition with clarified and narrowed certain topics, and proposed additional potential compromises. *Id.* at Ex. 24. As a result of the meet and confer process, Defendants have withdrawn Topics 2(b), (d), and (e), and 15, and the WAG has agreed to provide written responses to those topics. The WAG seeks a protective order for all Rule 30(b)(6) topics for which it has not agreed to answer in writing, including all topics related to Defendants' pled affirmative defenses.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## III. ARGUMENT

### A. The Federal Rules of Civil Procedure Apply to the WAG

Plaintiff seeks immunity from testifying about topics germane to this litigation: the facts supporting the allegations, when the WAG learned of those facts, the sources of such facts, the WAG's investigation and ethics practices, and discreet factual topics related to the WAG's affirmative defenses that only the WAG can testify to. But Federal Rules apply to the government, and specifically to "government agencies." Fed. R. Civ. P. 30(b)(6). "Like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure. It is not entitled to special consideration concerning the scope of discovery, *especially* when it voluntarily initiates an action." *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009) (emphasis added); *see also U.S., ex rel. Fry v. Health All. of Greater Cincinnati*, No. 1:03-CV-167, 2009 WL 5227661, at *1 (S.D. Ohio Nov. 20, 2009) (explaining that the government is not exempt from Rule 30(b)(6)); *SEC v. Merkin*, 283 F.R.D. 689, 698 (S.D. Fla. 2012), objections overruled, 283 F.R.D. 699 (S.D. Fla. 2012) (same). Numerous courts have compelled the government to produce 30(b)(6) witnesses. *See, e.g.*, *United States v. Health Alliance of Greater Cincinnati*, No. 1:03–cv–167, 2009 WL 5227661 (S.D. Ohio Nov. 20, 2009) (granting defendant's motion to compel and noting that the Government is not exempt from the 30(b)(6) discovery tool which expressly applies to agencies).

### B. The WAG's Investigation Is Relevant to Defendants' Defenses

The WAG argues that the deposition topics impede on work product. But Defendants have made clear to the WAG that they are seeking factual information, not attorney mental impressions. Further, multiple courts have ruled that a government agency can educate a witness on topics related to the claims and defenses in civil matters. *See, e.g.*, *Health All. Of Greater Cincinnati*, 2009 WL 5227661 at *3 (requiring the United States to identify a 30(b)(6) deponent to testify on its behalf and to prepare that witness as necessary to testify on relevant topics); *United States v. All Assets Held in Account Number XXXXXXXX*, No. CV 13-1832 (JDB), 2019 WL 13197264, at

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

*2 (D.D.C. June 12, 2019) (granting defendant's request to reopen a previous 30(b)(6) deposition because the government failed to prepare its designated deponent to testify on all matters within the noticed topic); *Merkin*, 283 F.R.D. 689, 698 (S.D. Fla. 2012), objections overruled, 283 F.R.D. 689 (S.D. Fla. 2012) (allowing Rule 30(b)(6) deposition despite that the SEC may need an attorney to prepare its deponent on topics within the SEC's knowledge).

The cases the WAG cites are inapposite and are based on the fact-specific holding in those cases that the government had adequately and fully produced information on particular requests. For example, in *EEOC v Texas Roadhouse, Inc.*, the EEOC had produced its entire investigation file, including "all non-privileged portions of the administrative file, including notes of all witness interviews as well as documentary evidence collected during its investigation." No. 11-11732-DJC, 2014 WL 4471521 (D. Mass. Sep. 9, 2014). Here, the WAG withheld its investigation file entirely, only producing signed declarations and not witness notes, which are subject to a Motion to Compel, Dkt. #99. In document and written discovery, the WAG has refused to identify key sources and provide key information about information obtained through oral communications, and claims any notes of those conversations are "work product."

For example, despite obtaining significant information from Dr. Portuese over two years, the WAG failed to identify Dr. Portuese in written discovery or any of its initial disclosures, which it amended 14 times. Sanders Decl. at Exs. 12, 13. Instead, Defendants discovered Dr. Portuese as a source of key information through public record requests. *Id.* at Ex. 3. The WAG withheld the full extent of Dr. Portuese's involvement. It waited nine months to produce a batch of its emails with Dr. Portuese. *Id.* at ¶25. In February 2024, the WAG produced calendar entries showing that Dr. Portuese's attorney met with the WAG without Dr. Portuese present. *Id.* at Ex. 25. Defendants are entitled to ask about and identify what other information the WAG has that is relevant to claims against Defendants.

Further, courts have rejected sweeping arguments that a deposition could not go forward because there is some possibility that some questions asked might seek protected information. *See*

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

*EEOC v. Sterling Jewelers Inc.,* No. 08–CV–00706(A)(M), 2010 WL 2803017 (W.D.N.Y. July 15, 2010) (denying federal agency's motion for a protective order to prohibit the 30(b)(6) deposition as premature because, with no questions having actually been asked, the Court could not "at this stage . . . conclude that there are no permissible areas of questioning"); *EEOC v. LifeCare Mgmt. Servs., LLC*, No. 02:08–cv–1358, 2009 WL 772834 (W.D. Pa. Mar. 17, 2009) (denying the EEOC's motion for a protective order and concluding the EEOC "like all other litigants, should object to actual questions which it believes any applicable privilege during the deposition and cannot be granted unwarranted or overly broad protections prior to any questions being asked of the deponent"); *United States v. Magnesium Corp. of Am.*, No. 2:01–CV–40DB, 2006 WL 6924985 (D. Utah Nov. 27, 2006) (granting defendant's motion to compel the government to designate and prepare witnesses to provide testimony in response to three 30(b)(6) notices despite the "significant effort" that may be necessary to do so).

Finally, even if some work product protection applies, Defendants have a substantial need for the information. The WAG has listed over 100 individuals in its most recent disclosures. It is not permitted under the Federal Rules of Civil Procedure, nor would it be practical, to depose each individual about its conversations with the WAG. Testimony regarding what the WAG gathered through interviews is highly relevant both the credibility of witnesses and to the facts provided to the WAG's investigators before it filed its case against Defendants. *See generally United States v. Nobles*, 422 U.S. 225 (1975). Because the WAG has failed to produce any interview notes, Defendants have no choice but to seek the contents of those conversations through depositions, and a 30(b)(6) deposition or deposition of the State's investigator (which it has also opposed) would be the most efficient way to do so.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

### C. Defendants' 30(b)(6) Topics Are Narrow and Seek Relevant Information

#### 1. Topics 1 and 2 Seek Facts Underlying the WAG's Claims, and Are Relevant to Defendants' Defenses and Affirmative Defenses

Topic 1 seeks "evidence obtained by the WAG during its investigation of Defendants that supports the allegations in the Complaint, the method by and source from which the evidence was obtained, and when the WAG discovered or obtained the evidence." Defendants do not seek attorney mental impressions but rather the specific facts supporting each allegation in the complaint and when and how the WAG became privy to such facts. *See SEC v. Merkin*, 283 F.R.D. 689, 698 (S.D. Fla. 2012), objections overruled, 283 F.R.D. 699 (S.D. Fla. 2012) ("Litigants are permitted to learn the facts underlying their opponent's claims and defenses."). This is directly relevant to Defendants affirmative defenses, including laches. *See FTC v. Directv, Inc.*, No. 15-CV-01129-HSG, 2015 WL 9268119, at *2 (N.D. Cal. Dec. 21, 2015) (sustaining claim of laches against FTC).

Topic 2(a) seeks facts that the State learned of through its investigation, including information provided orally to the WAG by third-party witnesses. The WAG engaged in nearly 4 years of pre-litigation investigation and discovery. The WAG argues that this is duplicative of documents already produced, but discovery has revealed, and the WAG cannot refute, that the WAG's investigation relied primarily on oral interviews.

Defendants cannot under the Federal Rules take depositions of all 130 individuals who have discoverable relevant information about the facts provided to the WAG's investigators. Forcing Defendants to obtain this testimony from third parties, rather than from a 30(b)(6) witness of the WAG, unnecessarily drives up costs for Defendants and would deeply prejudice Defendants' ability to discover facts and develop its defenses, and uncover potential impeachment evidence.

Topic 2(d) asks the State to identify which consumers were harmed by each practice alleged to be unlawful. The WAG argues that they should not have to provide discovery on this topic because they do not have to prove "causation" or "injury". But the WAG is seeking restitution.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Dkt. #1 at ¶ 9. As such, the topic of which consumers and how much were harmed is directly relevant.

In instructive case *FTC v. CyberSpy Software, LLC,* the FTC brought a lawsuit for unfair and deceptive practices under the FTC Act. No. 6:08-CV-1872-ORL-31, 2009 WL 8708856, at *1 (M.D. Fla. May 26, 2009). The FTC argued that Cyberspace was improperly trying to seek a deposition of counsel by proxy and sought to quash the 30(b)(6) subpoena. The court denied the motion, ruling, "Defendants are entitled to a Rule 30(b)(6) deposition of a governmental agency regarding the facts supporting the agency's case and that the FTC, as a governmental agency, is not immune from Rule 30(b)(6) designations." The court permitted Cyberspace to take a 30(b)(6) deposition on the "transactions, occurrences, events, claims or complaints giving rise to this action" (analogous to Defendants' Topic 1) and "[a]ny and all instances in which any person(s) suffered any type of harm" (analogous Defendants' Topic 2).

**2. The WAG Seeks to Improperly Quash Topics Directly Relevant to Defendants' Affirmative Defenses, which Cannot Be Obtained from Other Sources**

The WAG claims remaining Topics 3-5, 7, 9-14, and 16-18 seek information that is either privileged or irrelevant, or both, and incorrectly claims that the Court fully struck the affirmative defenses in Order on the Motion to the Strike. The WAG is mistaken. In the Order, the Court permitted Defendants to amend its affirmative defenses, including "affirmative misconduct" that may support the affirmative defenses. Dkt. #24 ("Affirmative Defenses … 13 [], and 16 [] are stricken with leave to amend"). Defendants then specifically pled significant facts based on information obtained from Public Record Requests to support its "unclean hands" and "laches" affirmative defenses. Dkt. #30 at p. 36. The WAG did not move to strike those allegations.

As described in detail above, records obtained through public record requests and the WAG's responses to written discovery provide a basis for Defendants' defenses. The WAG may not like these defenses, but Defendants are entitled to relevant discovery.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Further, a Rule 30(b)(6) deposition is the only reasonable means of discovery into these topics.

- Topics 3 and 4 seek information regarding CPD's "general investigative processes" and are relevant to the allegation that the WAG departed from its normal practices in deferring to the Washington Medical Commission. The WAG has objected to producing policies, procedures, and training of its investigation processes. Dkt. #99. Further, given the evidence that has been uncovered surrounding this prosecution, the Washington Attorney General Office's "ethics and training education regarding conflicts of interest" are relevant to whether the WAG followed its own policies with regards to vetting whether any attorney or staff should have been screened from participating in key decision regarding the investigation.
- Topic 5 requests information provided by Dr. Portuese to the WAG. The WAG claims the "Division has no other information to offer," however the WAG has not disclosed the contents of specific oral communications that Dr. Portuese had with Attorney General Ferguson, Shannon Smith, Matt Befort, Victoria Suner, or other WAG staff. *See, e.g.,* Sanders Decl. at Ex. 1.
- Revised Topic 7 only asks the WAG to identify the individuals who made key enforcement decisions regarding the Defendants.
- Topic 9 goes to the WAG's significant misstatements in its press conference. The WAG argues that its immunity prevents discovery into this area, but the Washington Supreme Court in *Gold Seal Chinchillas, Inc. v. State*, expressly held that immunity relating to press activities "does not open the floodgates for irresponsible state official action to libel maliciously opponents or people who would thwart or frustrate official desires and aims which might possibly involve illicit or illegal purposes." 69 Wash. 2d 828, 833, 420 P.2d 698 (1966). Dr. Sajan has a constitutionally protected liberty interest in his professional reputation. *Ritter v. Board of Com'rs of Adamsy County,* 637 P.3d 940,

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

945 (Wash. 1981). Defendants are entitled to ask about what safeguards the Washington Attorney General's Office had in place to ensure they did not violate Dr. Sajan's constitutional rights.

- Topic 10 goes to the Defendants' "unclean hands" affirmative defense, and whether the WAG's staff had any reasonable basis for making statements regarding Defendants' quality of care at the press conference.
- Topic 11 relates specifically to the "unclean hands" defense and whether the alleged practice is "unfair" or "deceptive." The WAG challenges Defendants' use of confidentiality clauses in refund and release agreements. Defendants are entitled to ask the narrow question whether the State of Washington uses confidentiality clauses in its settlement agreements.
- Topic 12 and 13 relate to whether the WAG deviated from its typical practice of handling investigations related to health care providers in opening and aggressively investigating against Defendants in response to a request from a political donor.
- Topic 16 asks whether the publicity tracking service the WAG used to track the "calculated publicity value" from the press conference regarding Defendants is paid for with public funds.
- Topics 17 and 18 explores the general handling of consumer complaints within the consumer protection division, and specifically the impact of whether a political donor can influence enforcement decisions.

## IV. CONCLUSION

The WAG is not entitled to immunity from a Rule 30(b)(6) deposition. The Court should deny the WAG's attempt to shield itself from discovery into its claims or Defendants' defenses.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Dated: April 17, 2024

*I certify that this memorandum contains 4186 (4200 max) words, in compliance with the Local Civil Rules*

By: *s/ James Sanders*

James Sanders, Bar No. 24565
Tiffany L. Lee, Bar No. 51979
Cara Wallace, Bar No. 50111
Kyle D. Nelson, Bar No. 49981
Reina Almon-Griffin, Bar No. 54651
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000
JSanders@perkinscoie.com
TiffanyLee@perkinscoie.com
CWallace@perkinscoie.com
KyleNelson@perkinscoie.com
RAlmon-Griffin@perkinscoie.com

OPPOSITION TO MOTION FOR PROTECTIVE ORDER – 14
(No. 2:22-cv-01835-RSM)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

166459039.2

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on April 17, 2024, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of the filing to the email addresses indicated on the Court's Electronic Mail Notice List.

Dated: April 17, 2024

s/ *Kyle Nelson*
Kyle D. Nelson, Bar No. 49981

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000