The Honorable Ricardo S. Martinez

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ALDERWOOD SURGICAL CENTER, LLC, a Washington limited liability company; NORTHWEST NASAL SINUS CENTER P.S., a Washington professional service corporation; and JAVAD A. SAJAN, M.D.,<br><br>　　　　　Defendants. | NO. 2:22-cv-01835-RSM<br><br>STATE'S OPPOSITION TO MOTION TO COMPEL PRIVILEGE LOG AND PRODUCTION OF WITHHELD INVESTIGATION DOCUMENTS<br><br>NOTE ON MOTION CALENDAR:<br>Friday May 3, 2024 |

## I.   INTRODUCTION

Allure[1] offers two far-fetched scenarios in an effort to establish this as an "extraordinary" case of state "affirmative misconduct"[2] and—admitting it doesn't have evidence of either one—asks the Court to compel the Consumer Protection Division to turn over core work product in the threadbare hope that *something* in the trial team's files will help them. But Allure's "equitable" defenses are frivolous, and the Motion to Compel is simply a continuation of the *ad hominem* attacks Allure uses to distract from the actual issues in this case.

---

[1] Defendants are collectively referred to as Allure.

[2] *See* Dkt. #24 at 6; Dkt. #97 at 10 ("[E]quitable defenses are generally unavailable against a government agency . . . [and] may be asserted against the government only in extraordinary cases involving 'affirmative misconduct.'") (quoting *United States v. Ruby Co.*, 588 F.2d 697, 703 (9th Cir. 1978)).

STATE'S RESPONSE TO MOTION
TO COMPEL - 1
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

In essence, Allure asks this Court to order the Division to turn over core work product so that Allure can fish for something that might reveal that the Attorney General ordered the Division to investigate Allure in exchange for a $500 political donation. The allegation is ridiculous and plainly inadequate to overcome the Division's work product protections. Alternatively, Allure claims to need the Division's files because an AGO investigator tainted the entire case by interviewing witnesses. This is also nonsense. Allure's implication that the investigator fabricated testimony or somehow rendered the sworn testimony of *fifty-five* eyewitnesses unreliable is utterly baseless.

Allure's arguments are circular and pure conjecture: it claims it needs access to the Division's work product *because* it has no evidence of malfeasance. If this dispute sounds familiar, that is because Allure's current motion shares the same deficiencies as its unsound attempt to depose the Division pursuant to FRCP 30(b)(6).[3] Allure's arguments are also futile, as this Court has twice ruled that the affirmative defenses are (1) defective and (2) insufficient to avoid liability.[4] Allure's allegations are a tale full of sound and fury, lacking any basis in reality, and the Court should not entertain them further.

The Division respectfully asks the Court to deny Allure's Motion to Compel. It is a last-ditch effort to distract and deflect from Defendants' blatant legal violations and discovery misconduct and should not be granted.[5]

---

[3] *See* Dkt. #94 (State's Motion for Protective Order Regarding Defendants' Notice of FRCP 30(b)(6) Deposition); Dkt. #115 (State's Reply in Support of Motion for Protective Order Regarding Defendants' Notice of FRCP 30(b)(6) Deposition).

[4] *See* Dkt. #24 at 6; Dkt. #97 at 9-10.

[5] The Division notes that withdrawing counsel Perkins Coie filed the instant motion to compel several hours after claiming that a conflict of interest required cancellation of Dr. Sajan's then-pending deposition. The claimed conflict did not, apparently, preclude counsel from advancing these frivolous affirmative defenses—only from providing the Division with long-overdue discovery.

STATE'S RESPONSE TO MOTION
TO COMPEL - 2
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## II.   FACTUAL BACKGROUND

**A.   The Consumer Protection Division**

The Consumer Protection Division (Division or CPD) is a specialized unit within the Attorney General's Office (AGO), charged with enforcing the Washington Consumer Protect Act. RCW 19.86.080(1). *See* Declaration of Laura Clinton (Clinton Decl.) ¶ 4. The AGO is the sole state official with statutory authority to enforce the CPA's prohibition against unfair and deceptive acts or practices and does so through the Division. RCW 19.86.020; *see also* RCW 19.86.080. The Division also enforces federal consumer protection laws that authorize enforcement by state attorneys general. Clinton Decl. ¶ 4; *see also* 15 U.S.C. § 45b(e)(1) (CRFA); 42 U.S.C. § 1320d-5(d)(1) (HIPAA). The Division protects consumers and the marketplace by robustly enforcing consumer protection laws, providing informal complaint resolution services between consumers and businesses, providing information and resources to consumers and businesses, and public education and outreach. Clinton Decl. ¶¶ 4-5.

This lawsuit, and the investigation that preceded it, were brought by the Litigation Section of the Division (Litigation Section). *Id.* ¶ 8. The Litigation Section comprises attorneys, investigators, and legal professional staff. *Id.* The Litigation Section learns of potential unfair or deceptive practices from a wide variety of sources, including consumer complaints, consumer advocates, public advertising and marketing, media, and regulatory agencies. *Id.* ¶ 9. Allure's suggestion that the Division normally investigates a business only after it receives a certain number of consumer complaints, or that it never anticipates litigation after a complaint is closed, is spurious. *See* Dkt. #116-2 at 2 ("…the Division's Consumer Resource Center, an informal and voluntary dispute resolution service staffed by non-lawyers, works with consumers to resolve their complaints against businesses. … In contrast, CPD's lawyers generally open investigations only after they have discovered evidence of possible significant wrongdoing—regardless of whether a consumer has complained about the business or practice."). CPD does not need to wait until a deceptive practice is publicly exposed in order to investigate.

STATE'S RESPONSE TO MOTION
TO COMPEL - 3
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## B. The Division's Investigation of Allure

In this case, the Division's investigation began with an anonymous consumer complaint that attached one of Allure's pre-service NDAs, which on its face appeared to violate CRFA and the CPA. *See* Dkt. #116-1. The Division reasonably anticipated litigation on August 19, 2019, when it opened an investigation after circulating a Case Selection Group agenda concerning Allure's business practices, including the apparently illegal NDA. *See* Declaration of Ben Brysacz (Brysacz Decl.) ¶¶ 3, 4, Exs. A & B; *see also* Dkt. #108-3 at 47; Dkt. #29 at 9 (identifying August 19, 2019 as date on which State first reasonably anticipated litigation).[6] That NDA was signed by a patient, and the Court has since ruled it violates CRFA. Dkt. #97. The ensuing investigation was thorough, and Allure has all written communications between the Division and third parties from the investigation save a handful of documents protected by common interest agreements with the FTC and HHS. *See* Dkt. #95-14. Allure has deposed numerous witnesses, including Dr. Portuese, who denied Allure's misconduct allegations. Dkt. #95-2.

## C. Allure's Equitable Defenses

Allure first raised unfounded allegations of Attorney General and Division misconduct in its answer. Dkt. #10 at 26-28. The Court struck those defenses eleven (11) months ago because "Defendants have not pleaded the facts to support any of these defenses, nor demonstrated that they could [do so]." May 26, 2023 Order, Dkt. #24 at 6. In reaching that conclusion, the Court recognized that equitable defenses "are generally unavailable against a governmental entity in a civil action brought to enforce a public right or protect a public interest" and "may be asserted against the government only in extraordinary cases involving 'affirmative misconduct.'" *Id*. (citing *FTC v. Debt Solutions, Inc.*, No. C06-298 JLR, 2006 WL 2257022, at *1 (W.D. Wash.

---

[6] Allure's counsel is well-aware of the date on which CPD anticipated litigation because on August 19, 2019 one of Allure's counsel was employed by CPD and was copied on the email containing the case-selection memorandum. *See* Brysacz Decl. ¶¶ 3, 10, Ex. A & G.

STATE'S RESPONSE TO MOTION
TO COMPEL - 4
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Aug. 7, 2006), and *United States v. Ruby Co.*, 588 F.2d 697, 703 (9th Cir. 1978)). Allure attempted to re-plead two equitable defenses, Dkt. #30, and it is those wild allegations on which it bases the present motion to compel.

### 1. Dr. William Portuese

Unsatisfied, Allure has been angling for second, third, and fourth bites at the apple ever since. The centerpiece of Defendants' sweeping equitable defense is their allegation that Dr. William Portuese, Dr. Sajan's purported rival, gained an astonishing amount of influence over the Attorney General by making a donation to his campaign just prior to July 30, 2019. The Washington Public Disclosure Commission's website reflects that Dr. Portuese *did* make a donation to the Friends of Bob Ferguson campaign in mid-July of that year. *See* Brysacz Decl. ¶ 5. The amount of that donation? $500. *Id*.

In response to Allure's written discovery, the Division has confirmed that "it received information from Dr. Portuese that it followed up on … but denie[d] that it pursued the investigation of Defendants in response to Dr. Portuese's request." Dkt. #95-1. Moreover, Dr. Portuese denied the allegations under oath, testifying that the brief interaction he had with the Attorney General regarding Allure involved the following exchange:

> I told Mr. Ferguson that I was – I introduced myself as "I'm a physician in town. Hello. How you doing?" And I just – we had some small talk, and then I said, "Hey, I" – "I have a problem in my industry that I need to talk to somebody about at the agency. Who should I talk to?" And [the Attorney General] goes, "Talk to Shannon Smith." That was the end of it.

Dkt. #95-2 at 15:23-16:5. Dr. Portuese testified he shared his concerns with CPD (which are memorialized in two letters), never spoke to the Attorney General again after that date, and learned of the lawsuit from the news after it was publicly filed. *Id.* at 45:8-16, 48:9-16, 48:21-23, 116:3-14, 120:18-22.

### 2. Division's Contacts with Witnesses

To date, the State has obtained forty-four consumer declarations and eleven ex-employee declarations—a total of fifty-five witness declarations—all of which have been produced and all

STATE'S RESPONSE TO MOTION
TO COMPEL - 5
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

of which attest to the unfair and deceptive conduct alleged in the State's Complaint. Dkt. #116 ¶ 9. All of these witnesses are identified in the State's witness disclosures along with the specific topics on which each of them has provided evidence. *See* Dkt. #108-3, pp. 348-374. Ignoring the overwhelming evidence of wrongdoing in these fifty-five declarations, Allure suggested that one of the Division's investigators is not impartial. *See* Dkt. #10 at 28 (Allure's original answer, 26th affirmative defense). The Court previously held that this accusation, and the evidence to support it, was insufficient to sustain Allure's due process equitable defense, which the Court dismissed with prejudice. Dkt. #24 at 7. In the same order, the Court noted that Allure had not pled facts sufficient to sustain its unclean hands defense. *Id*. at 6. While Allure re-pled its unclean hands defense, it offered no new facts to support its biased investigator theory. Dkt. #30 (amended answer).

Allure then turns to the witnesses' declarations, which contain the witnesses' own words as relayed to CPD's investigator. Aside from highlighting minor inconsistencies that witnesses corrected during depositions, Allure completely ignores those witnesses' actual testimony, in which they affirmed that their declarations reflected their own words, they were given an opportunity to correct or amend them before signing, and they overwhelmingly support the allegations in the Division's Complaint. *See* Dkt. ##116-3, 116-4, 116-5.

Allure also alleges that the Division improperly contacted witnesses ex parte in advance of their depositions. None of the witnesses at issue are parties or represented by Allure's counsel, and all of them were questioned about their contacts with CPD without objection by CPD. As several witnesses testified, they contacted CPD after receiving deposition subpoenas from Allure. CPD explained the deposition process and offered to send witnesses copies of their own declarations. *See, e.g.*, Brysacz Decl. ¶ 6, Ex. C.

3.  **Allure's Continued Unfair and Deceptive Conduct**

Finally, Allure suggests that it has repeatedly tried to settle this litigation to no avail, and has ceased all practices that CPD has identified as problematic. The first representation is

STATE'S RESPONSE TO MOTION
TO COMPEL - 6
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

irrelevant and skirts ER 408's prohibitions, and the second representation is demonstrably false. *See, e.g.*, Dkt. #97 at 8 (Allure's illegal pre-service NDAs still purport to restrict consumers); Dkt. #96 at 4, n.2 (Allure's fake reviews still appear online).

Against this backdrop, Allure now demands that the Division turn over its entire investigative file, prepared by and at the direction of the litigation team after the Division opened an investigation and reasonably anticipated litigation.

### III.   ARGUMENT

**A.   Scope of Work Product Protection**

The federal work product doctrine provides that an opposing party cannot obtain the work product of its adversary except under exceptional circumstances. Rule 26(b)(3) states:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under [FRCP 26(b)(1)] and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed. R. Civ. P. 26(b)(3). The rule also cautions that courts shall "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation." *Id.* (emphasis added). A party seeking to withhold production of discoverable materials as work product under Rule 26 must show that (1) the document was prepared in anticipation of litigation or for trial; and (2) was prepared by or for the party or the attorney asserting the privilege. *See San Diego Gas & Elec. Co. v. Westinghouse Elec. Corp. (In re California Pub. Utilities Comm'n)*, 892 F.2d 778, 780 (9th Cir. 1989). A court "must consider the totality of the circumstances and determine whether the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation." *United States v. Richey*, 632 F.3d 559, 567–68 (9th Cir. 2011).

Interview notes and other internal memoranda prepared by CPD's investigators

STATE'S RESPONSE TO MOTION
TO COMPEL - 7
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

summarizing the results of attorney-directed witness interviews about Allure's misconduct are core work product. *See United States v. Nobles*, 422 U.S. 225, 238-39 (1975); *O'Connor v. Boeing North American, Inc.*, 216 F.R.D. 640, 643-44 (C.D. Cal. 2003) (holding that interview notes prepared by counsel's investigator in anticipation of litigation are work product); *see also* Brysacz Decl. ¶¶ 7-8, Exs. D & E. It is black letter law that such witness interview notes, which reflect attorney mental impressions, constitute work product. *See FTC v. Ivy Capital, Inc.*, No. 11-cv-00283JCM-GWF, 2012 WL 1883507, at *6 (D. Nev. May 22, 2012) (holding that witness interview notes prepared by or at the direction of FTC attorneys in the course of FTC's pre-suit investigation were properly withheld as work product). As the United States Supreme Court has recognized, "[f]orcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." *Upjohn Co. v. United States*, 449 U.S. 383, 399-400 (1981).

The State has explained its work product positions clearly and consistently from the beginning of this case. *See, e.g.*, Dkt. #29 at 9 (identifying August 19, 2019 date). To be clear, (1) the State has not withheld any responsive documents dated prior to August 2019, the point at which it opened the investigation and reasonably anticipated litigation concerning Allure's practices; and (2) the State has logged all responsive documents dated between August 2019 and October 2021 that it withheld based on any claim of privilege. This goes above and beyond its obligations to log privileged material pursuant to the parties' negotiated ESI agreement. *See* Part III.D, *infra*.

Contrary to Allure's suggestion, CPD does not always anticipate litigation in anything it does. *See* Clinton Decl. ¶¶ 5-7. For example, the Division's Consumer Resource Center (CRC), an informal and voluntary dispute resolution service staffed by non-lawyers, works with consumers to resolve their complaints against businesses. *Id.* ¶¶ 5-6. The CRC complaint files are public, and CPD does not assert work product as to their contents. *Id.* ¶ 6.

In contrast, CPD's lawyers generally open investigations only after they have discovered

STATE'S RESPONSE TO MOTION
TO COMPEL - 8
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

evidence of possible significant wrongdoing—regardless of whether a consumer has complained about the business or practice.[7] *See* Clinton Decl. ¶¶ 9-10. CPD investigations, such as the one into Defendants' misconduct, are not routine regulatory exercises; the possibility of litigation is reasonably likely at the time the investigation is opened. *See also Abdallah v. Coca-Cola Co.*, No. 98-cv-36879RWS, 2000 WL 33249254, at *5 (N.D. Ga. Jan. 25, 2000) ("Litigation may generally be expected from agency investigations.") (citing cases). CPD's investigatory work product is a far cry from the materials in the cases cited by Allure. See *United States Fire Ins. Co. v. Icicle Seafoods, Inc.,* No. C20-401 RSM, 2021 WL 3602524 at *2 (W.D. Wash. Aug. 13, 2021) (accountant's report); *Head v. Disttech,* LLC, No. C16-1727 RSM, 2017 WL 3917065 at *4 (W.D. Wash. Sept. 7, 2017) (post-incident reports created in the ordinary course of business); *Reich v. Great Lakes Collection Bureau, Inc.,* 172 F.R.D. 58, 61 (W.D.N.Y.1997) (routine Department of Labor regulatory investigation).

Allure's unsupported innuendo about the impartiality of the investigation does not change this analysis. Allure has been free to question every witness about their interactions with CPD. Every time they have done so, witnesses have affirmed that their declarations were their own words. *See, e.g.*, Dkt. ##116-3, 116-4, 116-5. Minor inaccuracies in declarations, willingly corrected during a deposition, are far from sufficient grounds to strip away work product protections.

**B.    CPD Reasonably Anticipated Litigation on August 19, 2019**

The State reasonably anticipated litigation against Allure in August 2019, which is when CPD circulated a confidential memorandum to the Litigation Section and opened its investigation. At that point, CPD had already received and reviewed the illegal pre-service NDA

---

[7] Some sophisticated practices such as Allure's fake reviews, altered "before and after photos," misappropriation of Galderma rebates, and suppression of negative reviews before they reach consumers in this case, are *designed* to prevent consumers from discovering that a business is misleading them. CPD does not need to wait until a deceptive practice is publicly exposed to investigate it.

STATE'S RESPONSE TO MOTION TO COMPEL - 9
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  Allure was using to restrict consumers from posting negative reviews, *i.e.*, the same pre-service
2  NDA that forms the basis for the State's CRFA and CPA claims and that the Court already
3  concluded violates the CRFA. *See* Dkt. 97; Brysacz Decl. ¶ 9, Ex. F. The documents in the record
4  from that time period amply demonstrate the reasonable basis on which CPD anticipated
5  litigation. Where an enforcement division of a government agency identifies specific evidence
6  supporting potential litigation, its internal investigative materials are protected work product.
7  *See SEC v. Nacchio*, No. 05-CV-000480MS, 2007 WL 219966, at *7-8 (D. Colo. Jan. 25, 2007)
8  (finding that SEC's enforcement division reasonably anticipated litigation because it "had
9  embarked on a process that clearly reflected an adversarial perspective and a particularized
10  focus").[8] Here, once CPD received and reviewed specific evidence of Allure's illegal conduct
11  and embarked on an investigative process to determine the scope and nature of Allure's CPA
12  violations, it reasonably anticipated litigation. *See also Premier Harvest LLC v. Axis Surplus Ins.*
13  *Co.*, No. C17-0784JCC, 2017 WL 6026949, at *2 (W.D. Wash. Dec. 5, 2017) (work product
14  protection arises once litigation is "reasonably anticipated" based on "objective facts" that would
15  support litigation) (citing *U.S. v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011), and *Binks Mfg. v.*
16  *Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983)).[9]

17      Allure's assertions that CPD did not seek formal approval from the Attorney General to
18  file this lawsuit until after its extensive pre-suit investigation is also irrelevant. The Division
19  pursues investigations based on potential wrongdoing, and anticipates litigation with the target.

---

[8] The SEC has other divisions that are not enforcement divisions whose regulatory or compliance investigations may be less likely to be performed in anticipation of litigation, but those sorts of investigations are not comparable to the CPD's investigation here. *See SEC v. Nadel*, No. CV 11-215 WFK AKT, 2012 WL 214162 at *2-3 (E.D.N.Y. Jan. 24, 2012) (drawing this distinction).

[9] In *Binks Mfg.*, cited by Judge Coughenour in *Premier Harvest*, the court further clarified that "'litigation need not be imminent'" so long as "'the primary motivating purpose behind the creation of a document or investigative report [is] to aid in possible future litigation.'" *Binks Mfg.*, 709 F.2d at 1119 (quoting *Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C. 1982)).

STATE'S RESPONSE TO MOTION
TO COMPEL - 10
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  *See* Clinton Decl. ¶ 10. If it determines that the wrongdoing is sufficiently egregious and
2  provable, it may seek authority to bring suit. *Id.* Allure's position that CPD cannot reasonably
3  anticipate litigation until it is ready to file a lawsuit, having already concluded that litigation is
4  necessary and recommended the same to the Attorney General, is preposterous on its face and
5  contrary to the law. *See Nacchio*, 2007 WL 219966, at *8 ("Underlying Defendant Kozlowski's
6  position is the notion that a bright line can be drawn between pre-litigation fact-finding process
7  and the actual decision to commence litigation. In this case, Kozlowski seemingly would limit
8  the work product doctrine to those materials prepared after the SEC made its decision to
9  commence actual litigation. That view is contrary to the weight of established precedents.").

### C. Allure Has No Substantial Need for CPD's Investigative Notes

Allure does not need to "replicate" CPD's investigation by combing through its files: unlike the Division, Defendants have direct personal knowledge of the events at issue; they control or have access to all the primary documents evidencing those events; they know the actual identities of the consumers involved; and for those witnesses they cannot talk to voluntarily, they can and have deposed many, and they have the opportunity to depose many more if they wish. Any argument that Allure is at an informational disadvantage in this case is absurd; Allure has complete knowledge of its conduct and is trying to confirm exactly what the State knows and who it spoke to about Allure's actions. But CPD's knowledge is not at issue in this case and the scope of its investigation is pure work product. Routine discovery has provided Allure with all the information and documents to which it is entitled. The fact that Allure's misconduct was so widespread and affected so many consumers is not a justification to invade CPD's work product. It is not the rule that the larger and more sprawling the fraud, the easier the access to an opponents' work product.

The purpose of the work product doctrine is to require counsel to conduct their own investigations of the facts, instead of piggybacking on the efforts of opposing counsel. Allure has had over a year to contact the witnesses CPD has identified as persons most likely to have

STATE'S RESPONSE TO MOTION
TO COMPEL - 11
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

relevant knowledge. If Allure has not conducted its own diligent investigation, that does not entitle it to CPD's work product.

**D.   CPD's Privilege Log Complies with the Parties' Negotiated ESI Agreement**

The parties agreed in their ESI Agreement that "[w]ith respect to privileged or work-product information generated after each party reasonably anticipated litigation, parties are not required to include any such information in privilege logs." Dkt. #29 at 9. Under the ESI agreement, "ESI" is any and all "electronically stored information" which includes virtually all discoverable documents and information in this case. *Id.* at 1. CPD reasonably anticipated litigation starting in mid-August 2019 when the Division opened its investigation of Allure. *See* Brysacz Decl. ¶¶ 3-4, Exs. A & B. Accordingly, CPD has logged privileged documents and work product generated after that date. In an (ultimately futile) effort to avoid motion practice on these issues, the Division went above and beyond its obligations in the Agreement by voluntarily logging materials through October 7, 2021.

Allure negotiated this agreement (which is dated June 21, 2023, well after the JSR filed on March 7, 2023) and agreed to its terms, including that the parties would not log privileged documents generated after each anticipated litigation. There is nothing "gotcha" about the Division's position. Allure demands a one-sided supplementation of CPD's privilege log contrary to the parties' agreement. It bases that argument on its disagreement about the date CPD reasonably anticipated litigation (*see* Part III.B, *supra*), its claimed substantial need (*see* Part III.C, *supra*), and its erroneous narrow reading of the scope of documents covered by the ESI agreement. That belief cannot be squared with the plain language of the ESI Agreement, which is broadly "intended to assist the parties in identifying relevant, responsive information that has been stored electronically," even including "Hard-Copy Documents" that the parties may elect to produce in electronic format. ESI Agreement, Dkt. #29 at 6-7. Allure's argument that the State's investigative files fall outside the scope of the ESI Agreement is a bad-faith attempt to re-write the parties' agreement and change the rules of discovery.

STATE'S RESPONSE TO MOTION
TO COMPEL - 12
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

### E. CPD's Policies and Procedures Are Irrelevant

Finally, Allure renews its request for CPD's internal policies and procedures, claiming vaguely that they are relevant to "issues with [CPD's] investigation" and "unfair and slanted investigation tactics." Dkt. #99 at 13. As discussed above, this characterization of the investigation is thoroughly unsupported and affirmatively disproven, notwithstanding Allure's repeated diatribes. The Court can and should refuse to authorize more discovery into this irrelevant topic which is not pertinent or necessary to the resolution of claims and defenses in this case. *See* FRCP 26(b)(1) (limiting discovery to relevant, proportional information).

## IV. CONCLUSION

For the foregoing reasons, the Division respectfully requests that the Court deny Allure's Motion to Compel.

DATED this 29th day of April, 2024.

ROBERT W. FERGUSON
Attorney General

/s Ben Brysacz
MATTHEW GEYMAN, WSBA #17544
ZORBA LESLIE, WSBA #58523
ALEXANDRA KORY, WSBA #49889
BRET FINKELSTEIN, WSBA #48845
BEN BRYSACZ, WSBA #54683
RABI LAHIRI, WSBA #44214
Assistant Attorneys General
Attorneys for Plaintiff State of Washington
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

*I certify that this memorandum contains 4,114 words, in compliance with the Local Civil Rules.*

STATE'S RESPONSE TO MOTION
TO COMPEL - 13
(2:22-cv-01835-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744