UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 2:22-CV-01835-RSM |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION TO COMPEL |
| v. | |
| ALDERWOOD SURGICAL CENTER, LLC, a Washington limited liability company; NORTHWEST NASAL SINUS CENTER P.S., a Washington professional service corporation; AND JAVAD A. SAJAN, M.D., | |
| Defendants. | |

This matter comes before the Court on Plaintiff State of Washington's Motion to Compel, Dkt. #82. Plaintiff seeks to compel production of documents and testimony related to Defendants' former in-house attorney Amaya Smith based on a waiver of attorney-client privilege. Defendants Alderwood Surgical Center, LLC, Northwest Nasal Sinus Center P.S., and Javad A. Sajan, M.D. (collectively "Allure") have filed an opposition. Dkt. #87. Neither party has requested oral argument.

Ms. Smith was hired by Allure in 2018 as a "pre-op coordinator" and in-house counsel. Dkt. #84-1 ("Smith Dep."), 38:4-17. Throughout her time at Allure, Smith had several privileged communications with Sarah Wright (another pre-op coordinator and in-house counsel), Defendant Dr. Sajan, and Gricelda Prado (Allure's COO), about the legality of enforcing Allure's pre-service NDA against patients who posted negative reviews. Ms. Smith's advice in each case was the same. *Id*. at 146:8-18, 179:9-15 ("To me, they were all the same issue."), 134:9-143:10; Dkt. #84-2 ("OAH Hearing") at 16:16-22 ("This is in a legal issue that we had dealt with for several months . . . over the course of my employment there, that I had discussed with the

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL – 1

employer numerous times."), 33:17-34:3, 44:18-45:9 (Sarah Wright agreeing that she and Ms. Smith "constantly" disagreed over Allure's approach to patients that posted negative reviews). The group discussed whether to send patients cease-and-desist letters threatening claims for defamation and breach of contract.  Smith Dep. at 56:21-58:9, 146:8-18.  Ms. Smith repeatedly advised Wright, Prado, and Dr. Sajan that those claims were meritless and frivolous.  *Id*. at 134:9-17, 147:8-152:1; OAH Hearing at 14:15-15:13, 20:14-21:5, 27:14-28:16.  Allure did not follow her legal advice.  *Id*. at 162:4-10.

On July 30, 2018, after working only four months, Ms. Smith resigned.  Her resignation letter explicitly cites "[l]egal decisions" that she disagreed with, "some of which I believe can adversely affect me professionally."  Dkt. #84-6; *see also* Smith Dep. at 125:13-126, 186:10-20; OAH Hearing at 14:17-15:13.

Ms. Smith filed for unemployment.  Smith, Prado, and Wright each testified at the unemployment hearing and discussed Smith's reasons for leaving Allure, including the disagreements over Ms. Smith's legal advice.  OAH Hearing at 14:15-15:13 (Smith), 37:3-38:11 (Prado), 44:13-46:15 (Wright).  Ms. Smith testified that she advised Allure that its legal threats to patients were meritless.  *Id*. at 14:15-15:13, 20:14-21:5, 27:16-28:16.  She explained that she gave that same advice throughout her tenure at Allure.  *See, e.g., id*. at 16:13-22, 33:17-34:3; *see also id*. 44:18-45:9 (Sarah Wright agreeing that she and Smith "constantly" disagreed over Allure's approach to patients that posted negative reviews).  During the hearing, Sarah Wright, acting as Allure's counsel, explicitly waived the attorney-client privilege for "limited purposes:"

> The Court: … But I think her concern is valid that she doesn't want to disclose too much attorney-client-privileged information in this proceeding. So for limited purposes so that, you know, the information can come out, I want to know exactly what it is she disagreed with or what the meritless action was, to understand her ethical concerns.

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL – 2

> Ms. Wright: I haven't spoken to my client, but, you know, on a
> limited basis to (inaudible) some of that in order to be more
> forthcoming about the claims, it's fine in these circumstances.

*Id*. at 19:5-15.  Later, Ms. Smith questioned whether she could state something without violating attorney-client privilege and was told by Ms. Wright, "Well, we've already – we've allowed limited disclosure at this point to clarify what was frivolous about the letter."  *Id.* at 28:3-16.

In 2022, prior to this litigation, the State took Civil Investigative Demand ("CID") depositions of Smith and Wright as part of its investigation.  During Ms. Wright's testimony, Allure's counsel agreed that "[a]nything discussed at that hearing at the unemployment office is going to be a waived privilege issue."  Dkt. #84-4 at 162:23-163:25.

However, Allure has asserted the attorney-client privilege over other communications on the same subject matter during the State's investigation and in this litigation.  In both Smith's and Wright's CID depositions, Allure's counsel repeatedly objected and instructed the witnesses not to testify about any communications that were not explicitly revealed during the unemployment hearing.  *See, e.g.*, Dkt. #84-3 at 60:9-64:12; Dkt. #84-4. at 145:13-146:25.  Both deponents followed the instruction not to testify.

During Ms. Smith's deposition for this litigation on March 6, 2024, Allure's counsel instructed her not to testify about discussions she had with Dr. Sajan. Smith Dep. at 120:2-125:10 ([Allure's Counsel]: "[Y]ou can testify the same things today, as you did at the OAH hearing. Okay? That's – that's what's been waived. They can't ask you questions about anything relating to the same subject matter. That's – we're going to assert our privilege on.").  Counsel also instructed her not to testify about other instances where she gave legal advice about the same factual situation, *i.e.*, whether Allure should threaten to sue a patient who had posted a negative review.  *Id.* at 143:3-145:1.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The State now moves for the Court to rule that "Allure has waived the attorney-client privilege over communications between Smith, Wright, Prado, and Dr. Sajan (and any others), on the same subject matter as the communications disclosed in Smith's unemployment hearing, including any communications where Smith advised Allure against demanding that patients take down truthful reviews and threatening to sue those patients if they refused." Dkt. #82 at 12.  The State requests its fees for this motion.  *Id*. at 13.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  If requested discovery is not answered, the requesting party may move for an order compelling such discovery.  Fed. R. Civ. P. 37(a)(1).  The party that resists discovery has the burden to show why the discovery request should be denied.  *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

Federal law applies to questions about the scope of the attorney-client privilege in this case.  *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. Of Arizona*, 881 F.2d 1486, 1492 (9th Cir. 1989) (explaining that federal law governs the attorney-client privilege in nondiversity actions).  Although the attorney-client privilege is a vital aspect of our justice system, because it "contravene[s] the fundamental principle that the public has a right to every man's evidence," courts "construe it narrowly to serve its purposes" and "recognize several ways by which parties may waive the privilege."  *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126 (9th Cir. 2012) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).  The burden is on the party asserting the

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL – 4

privilege to show the privilege has not been waived. *Wadler v. Bio-Rad Labs., Inc.*, 212 F. Supp. 3d 829, 851 (N.D. Cal. 2016) (citing *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)). When a privileged communication is disclosed in a state proceeding, in a later federal proceeding the court should apply the law that is most protective of the privilege in determining the existence and scope of the waiver. Fed. R. Evid. 502(c) & cmt. c. Both Washington State and federal law allow for subject matter waivers following a voluntary disclosure of privileged communications. *See* Fed. R. Evid. 502(c) and Wash. R. Evid. 502(a).  However, subject matter waiver is only for "unusual situations in which fairness requires a further disclosure of related, protective information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502(d), advisory committee's note.

Waivers of the attorney-client privilege fall into two categories. "Implied" waivers are those where the party puts legal advice at issue in the case and thus impliedly waives the privilege. "Express" waivers are those where a party voluntarily waives the privilege by turning over privileged communications to a third party. *Wadler*, 212 F. Supp. 3d at 850 (citing *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003)).

Once the waiver is established, the question turns to the scope of the subject matter waived by the disclosing party. A "voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981); *see also United States ex rel. Parikh v. Premera Blue Cross*, No. 2:01-cv-00476-MJP, 2006 WL 6654604, at *1 (W.D. Wash. Oct. 31, 2006).

Plaintiff argues that, out of fairness, parties are "generally not permitted to use the privilege as both sword and shield."  Dkt. #82 at 9 (citing *Weil*, 647 F.2d at 24; *Premera Blue*

*Cross*, 2006 WL 6654604, at *1).  Plaintiff states that the privilege was used as a "sword" at Ms. Smith's unemployment hearing: "Allure selectively waived its privilege when it allowed Smith, Wright, and Prado to testify about Smith's legal advice, and their disagreements over that advice…" *Id*.  Plaintiff points out that Allure prevailed in the unemployment hearing.  *Id*. at 10.

In Response, Allure argues the privilege was not used as a sword because its waiver was "directed" by the Administrative Law Judge and because "Ms. Smith disclosed the limited information about the reasons she resigned to support her claim in the hearing."  Dkt. #87 at 3.

The Court agrees with Allure that the waiver was essentially invited by the Administrative Law Judge, although not ordered, and that the privilege was not used as a sword in that proceeding nor is there any indication that it will be used as such in this proceeding.  Therefore, the express waiver at the unemployment hearing does not invite a broad opening up of the waiver to subject matters similar to those discussed in the hearing.

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Plaintiff State of Washington's Motion to Compel, Dkt, #82, is DENIED.  The Court notes that Allure has waived the attorney-client privilege over communications between Smith, Wright, Prado, and Dr. Sajan (and any others) disclosed in Smith's unemployment hearing and should permit questions and produce any documents it has withheld or redacted on privilege grounds contrary to this ruling.

DATED this 30th day of April, 2024.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE