1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

STATE OF WASHINGTON,

NO. 2:22-CV-01835-RSM

10

Plaintiff,

11

v.

ORDER GRANTING IN PART
PLAINTIFF'S MOTION FOR
PROTECTIVE ORDER

12

ALDERWOOD SURGICAL CENTER, LLC, a
Washington limited liability company;
NORTHWEST NASAL SINUS CENTER P.S.,
a Washington professional service corporation;
AND JAVAD A. SAJAN, M.D.,

13
14
15
16

Defendants.

17
18

This matter comes before the Court on Plaintiff State of Washington's "Motion for

19

Protective Order regarding Defendants' Notice of FRCP 30(b)(6) Deposition," Dkt. #94.

20

Defendants Alderwood Surgical Center, LLC, Northwest Nasal Sinus Center P.S., and Javad A.

21

Sajan, M.D. (collectively "Allure") have filed an opposition.  Dkt. #106.[1]  Neither party has

22

requested oral argument.

23
24

---

[1] Allure's counsel notes at the top of its Response that it has tried to withdraw in this matter and "requests that any

25

substitute counsel engaged by Defendants be permitted to supplement or replace this Opposition and the Court hold
any ruling on the States' motion (Dkt. 94) in abeyance until such opportunity has been afforded to substitute

26

counsel."  Dkt. #106 at 1.  The Court has since granted counsel's request to withdraw but did not permit such to
occur until new counsel has been obtained.  *See* Dkt. #117. No counsel has appeared. Allure presents no legal basis

27

to permit a second Response brief to be filed at some indeterminate future time, nor any basis to delay ruling on this
important Motion.  The Court denies those requests.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PROTECTIVE ORDER – 1

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  If requested discovery is not answered, the requesting party may move for an order compelling such discovery. Fed. R. Civ. P. 37(a)(1).  The party that resists discovery has the burden to show why the discovery request should be denied.  *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending – or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken." Fed. R. Civ. P. 26(c)(1).  "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…"  *Id*.  "The decision to issue a protective order rests within the sound discretion of the trial court."  *Seiter v. Yokohama Tire Corp.*, 2009 WL 2461000, *1 (W.D. Wash. 2009).

Under Rule 30(b)(6), a party naming as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity must describe "with reasonable particularity" the matters for examination.

At issue in this Motion are topics 1-5, 7, 9-14, and 16-18 listed by Allure for an upcoming deposition of Plaintiff's 30(b)(6) designee:

> 1. All evidence obtained by the WAG during its investigation of Defendants that supports the allegations in the Complaint, the method by and source from which the evidence was obtained, and when the WAG discovered or obtained the evidence.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PROTECTIVE ORDER – 2

2. The WAG's Investigation of Defendants, including but not limited to: (a) The specific conduct of Defendants which the WAG takes the position violates or violated the Washington Consumer Protection Act, RCW 19.86, the Consumer Fairness Review Act, HIPAA, or any other law or regulation that the Consumer Protection Division has authority to enforce; (b) The WAG's calculation of the total number of violations of the CPA for specific conduct the WAG alleges violates the CPA, and the specific remediation, injunctive relief, disgorgement, restitution, or penalties that the WAG deems appropriate for the [sic] each of the alleged violations; (c) The "consumers" the WAG is alleging are harmed under the Washington Consumer Protection Act, RCW 19.86, by Defendants' conduct; (d) Whether and which witness statements were taken under oath during the Investigation; and (e) The WAG's referrals of any subject matter area of the investigation of Defendants to any other local, state, or federal government office or agency.

3. The Consumer Protection Division's general investigative process, including: (a) The current and historical process and criteria for intaking and analyzing consumer and constituent complaints; (b) The general process and criteria for determining whether to file a lawsuit against a specific target; (c) The factual basis of the WAG's claim of work product protections on investigative memoranda of interviews created by WAG investigators; (d) Practices and procedures relating to the decisions of whether to interview or depose targets of an investigation; and (e) The current and historical process for ensuring that the attorneys or staff assigned to particular investigations or litigations do not have any actual or potential conflicts-of-interest or other biases that would undermine the ability of the WAG to fulfill its mission of providing "independent, and ethical legal services to the State of Washington and protect the rights of its people."

4. [Revised Topic] The WAG's ethics and training education regarding conflicts of interest.

5. Dr. William Portuese's communications with the WAG or any of its representatives or staff, including Attorney General Bob Fergusson.

7. [Revised Topic] Identify the individual(s) who made the decision to open an investigation into Defendants, issue a CID to Defendants, reject the pre-litigation settlement offer from Defendants, and initiate litigation against Defendants.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PROTECTIVE ORDER – 3

9. The WAG's process for ensuring that information that it conveys to the public via the press is accurate and non-misleading, including: (a) The WAG's Public Affairs Unit's ("PAUs") responsibilities, including the PAU's processes in ensuring its press releases, press conferences, and other information conveyed to the public is truthful, accurate, and non-misleading; (b) The process that the WAG undertook to ensure that public statements regarding the investigation and conduct of Defendants were true and accurate; (c) The Attorney General's decision to omit the key fact that the Consumer Protection Division launched its investigation into Defendants after receiving a complaint from Defendants' competitor, Dr. William Portuese; (d) Any efforts prior to the December 29, 2022 press conference to substantiate the truthfulness of the allegations and statements made by Cynthia Tamlyn and Victoria Hester at the press conference; (e) The specific steps that PAU took to prepare the Attorney General for the Press Conference; and (f) The WAG's media outreach regarding Defendants.

10. The Office of the Attorney General's regulation of healthcare providers, including: (a) The Consumer Protection Division's expertise, experience, and authority in regulating and investigating issues related to the practice of medicine. (b) The WAG's historical and current positions as to primary jurisdiction over health care practitioners with regards to the practice of medicine, the entrepreneurial aspects of medicine, and regulation of healthcare generally; (c) The authority upon which the Consumer Protection Division has authority to investigate and regulate the practice of medicine under the Consumer Protection Act, RCW 19.86; and (d) The WAG's positions on the scope of its consumer protection authority vis-à-vis other primary regulators, such as the Washington Medical Commission or the U.S. Department of Health and Human Services, Office of Civil Rights.

11. Any historical or current use of settlement agreements that include confidentiality or non-disparagement clauses by the State of Washington, including but not limited to the use of settlement agreements by the Torts Division or University of Washington School of Medicine.

12. [Revised Topic] The outcomes of closed CPA investigations by the WAG into other health care practices.

13. [Revised Topic] The outcomes of closed CPA investigations by the WAG into other cosmetic or plastic surgery practices, and without invading any privilege or statutory confidentiality

protection, the existence of any ongoing investigations into other cosmetic or plastic surgery practices.

14. [Revised Topic] The aggregate number of CPA investigations opened by the WAG in each of calendar years 2016-2023.

16. Source of funding for any services received by the WAG from News Exposure.

17. Meetings with complainants that were initiated through direct contact with Attorney General Ferguson between 2017-present.

18. The extent to which Attorney General Ferguson's political career and aspirations influence investigation and litigation decisions within the WAG.

Dkt. #95-11 ("Amended Notice of Rule 30(b)(6) Deposition"); Dkt. #94 at 4 (briefing listing topics at issue).

For Topics 1 and 2, Plaintiff argues that the investigation at issue was conducted entirely in anticipation of litigation, that its 30(b)(6) witness has no independent knowledge, and that therefore "the only information a witness could provide are facts and opinions held by the trial team." Dkt. #94 at 6 (citing, *inter alia*, *SEC v. Buntrock*, 217 F.R.D. 441, 444 (N.D. Ill. 2003) ("The investigation in this matter was conducted by SEC attorneys and by SEC employees working under the direction of attorneys. Thus, the 30(b)(6) notice would necessarily involve the testimony of attorneys assigned to this case, or require those attorneys to prepare other witnesses to testify.")). Plaintiff argues the topics are too likely to scoop up privileged work product. *Id.* at 6 – 7 (citing, *inter alia*, *SEC v. Nacchio*, 614 F. Supp. 2d 1164, 1177 (D. Colo. 2009)). Plaintiff asserts these topics are overbroad, vague, and unduly burdensome. *Id.* at 7. Finally, Plaintiff maintains that Topic 2(c)'s request for identification of harmed consumers is irrelevant because consumer harm is not an element of its CPA case. *Id.* (citing *State v. Mandatory Poster Agency, Inc.*, 199 Wn. App. 506, 518, 398 P.3d 1271, 1276 (2017)).

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PROTECTIVE ORDER – 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

The Court finds that Topics 1 and 2 generally seek factual information, not attorney mental impressions, and Plaintiff is free to object during the 30(b)(6) deposition as to any question that elicits material protected by the work product privilege.  The Court finds that these topics are not overbroad, vague, or unduly burdensome.  Plaintiff has failed to convince the Court that topic 2(c) is irrelevant considering Allure's point that Plaintiff is seeking restitution for consumers.  *See* Dkt. #106 at 10–11 (citing Dkt. #1 at ¶ 9).  The Court denies Plaintiff's Motion as to these Topics.

Turning to Topics 3-5, 7, 9-14, and 16-18, Plaintiff states:

> Allure claims these topics are relevant to its affirmative defenses. *See* Brysacz Decl. ¶ 13, Ex. J. Those defenses, however, were absurd from the outset. This Court struck them, and in doing so noted the high bar for asserting them against a "governmental entity in a civil action brought to enforce a public right or protect a public interest." May 26, 2023 Order, Dkt. #24 at 6. It has now been nine months since Allure re-pled those defenses. After countless written responses to RFAs and Interrogatories, Public Records Act requests, and the deposition of Dr. Portuese—Dr. Sajan's purported rival— Allure can identify no evidence supporting these affirmative defenses.
>
> CPD has asked at least four times over the past months for Allure to identify any evidence supporting these affirmative defenses and indicating that without such a proffer, further discovery into these topics is not well-founded. Allure has declined every opportunity support its defenses, until the eve of this motion, when it reiterated the same theories this Court dismissed last year along with baseless speculation that has been affirmatively disproven by documents and deposition testimony. That failure illustrates the truth—these deposition topics are not designed to obtain relevant information, are not proportional to the needs of the case, are not important to resolving the issues presented, and seek to impose undue burden and expense on CPD as this case proceeds to trial. *See* FRCP 26(b)(1). They are a sideshow…

Dkt. #94 at 8.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PROTECTIVE ORDER – 6

1

2    The Court agrees with Plaintiff that Topics 3 and 4 "presuppose some investigative

3    misconduct by CPD, an allegation for which there is no evidence." *Id*. at 9. These topics do not

4    refer to some specific incident or event but seek to scoop up all possible information to look for

5    misconduct. These topics are fishing expeditions that seek information not particularly relevant

6    to claims or defenses and are overbroad and not proportional to the needs of the case. For Topic

7    5, Plaintiff states that it has already produced its communications with Dr. William Portuese;

8    Allure is nevertheless free to ask questions about this topic. Topic 7 clearly seeks attorney work

9    product or privileged information and will not be permitted. Topic 9 also presupposes some

10   investigative misconduct by Plaintiff and will not be permitted for the same reasons as Topics 3

11   and 4; it also appears to stray far from the claims and defenses in this case. The Court agrees

12   with Plaintiff that Topic 10 is vague, ambiguous, overbroad, unduly burdensome, duplicative of

13   information obtained in writing, and not minimally relevant to the issues in this case. Topic 11

14   is irrelevant and unduly burdensome; the State's practice of confidentiality in settlement

15   agreements has no bearing on the issues in this case. Topics 12 through 14 seek information

16   about Plaintiff's investigations into other health care practices. This information is not

17   particularly relevant and not proportional to the needs of the case; again it appears to be a classic

18   fishing expedition based on nothing. Topic 17 appears to seek information that is directly

19   relevant to this case, although it is vague. Plaintiff has failed to demonstrate that Topic 17 should

20   be subject to a protective order. Topic 18 presupposes misconduct, is vague, ambiguous, overly

21   broad, and unduly burdensome and will not be permitted.

22

23       The Court also agrees with Plaintiff that this witness can only speak on behalf of the

24   Consumer Protection Division. *See* Dkt. #94 at 13.

25

26

27

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PROTECTIVE ORDER – 7

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Plaintiff State of Washington's "Motion for Protective Order regarding Defendants' Notice of FRCP 30(b)(6) Deposition," Dkt. #94, is GRANTED IN PART as stated above.

DATED this 30th day of April, 2024.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PROTECTIVE ORDER – 8