1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

STATE OF WASHINGTON,                          NO. 2:22-CV-01835-RSM

9                      Plaintiff,

ORDER DENYING IN PART
DEFENDANTS' MOTION TO COMPEL

10            v.

11

ALDERWOOD SURGICAL CENTER, LLC, a
12   Washington limited liability company;
NORTHWEST NASAL SINUS CENTER P.S.,
13   a Washington professional service corporation;
AND JAVAD A. SAJAN, M.D.,
14

15                      Defendants.

16        This matter comes before the Court on Defendants Alderwood Surgical Center, LLC,

17   Northwest Nasal Sinus Center P.S., and Javad A. Sajan, M.D. (collectively "Allure")'s Motion

18   to Compel, Dkt. #99.  Allure moves for an order compelling Plaintiff State of Washington ("also

19   referred to as the Washington Attorney General, "WAG," or the Consumer Protection Division,

20   "CPD") "to produce – or for the Court to conduct an *in camera* review of – raw witness notes

21   and other factual information the WAG maintains in its investigation file about Defendants, such

22   as: factual investigation notes; investigation recordings; factual portions of investigation

23   memorandums, summaries, and reports; and investigation policies, procedures, and training

24   materials."  *Id*. at 2.  Plaintiff has filed an opposition.  Dkt. #122.  Neither party has requested

25   oral argument.

26

27

ORDER DENYING IN PART DEFENDANTS' MOTION TO COMPEL – 1

Allure moves to compel materials that appear on their face to be classic work product because the WAG's investigation "deviated from normal investigation practices," and because "[t]wo WAG-influenced witnesses have now walked back the 'declaration' the WAG drafted and directed them to sign, admitting that material portions of the declaration are not true." Dkt. #99 at 2. Allure "seek[s] the WAG's investigation notes and other investigation documents to determine what witnesses said before the WAG influenced them to sign inaccurate and exaggerated declarations." *Id*.

Allure puts forth a theory of how the investigation began—instigated by "one of Defendants' primary competitors, Dr. William Portuese." *Id*. at 3. The parties agree that the CPD began its investigation after receiving an anonymous complaint from Dr. Portuese on May 22, 2019. *See* Dkt. #101-1 at 41 and 11. Allure also asserts that "the WAG chose a lead investigator who was a former patient of Defendants, a clear and easily curable conflict of interest." *Id*. at 4.

In response, Plaintiff argues:

> To date, the State has obtained forty-four consumer declarations and eleven ex-employee declarations—a total of fifty-five witness declarations—all of which have been produced and all of which attest to the unfair and deceptive conduct alleged in the State's Complaint. Dkt. #116 ¶ 9. All of these witnesses are identified in the State's witness disclosures along with the specific topics on which each of them has provided evidence. *See* Dkt. #108-3, pp. 348-374. Ignoring the overwhelming evidence of wrongdoing in these fifty-five declarations, Allure suggested that one of the Division's investigators is not impartial. *See* Dkt. #10 at 28 (Allure's original answer, 26th affirmative defense). The Court previously held that this accusation, and the evidence to support it, was insufficient to sustain Allure's due process equitable defense, which the Court dismissed with prejudice. Dkt. #24 at 7. In the same order, the Court noted that Allure had not pled facts sufficient to sustain its unclean hands defense. *Id*. at 6. While Allure re-pled its unclean hands defense, it offered no new facts to support its biased investigator theory. Dkt. #30 (amended answer).

ORDER DENYING IN PART DEFENDANTS' MOTION TO COMPEL – 2

1

2

> Allure then turns to the witnesses' declarations, which contain the witnesses' own words as relayed to CPD's investigator. Aside from highlighting minor inconsistencies that witnesses corrected during depositions, Allure completely ignores those witnesses' actual testimony, in which they affirmed that their declarations reflected their own words, they were given an opportunity to correct or amend them before signing, and they overwhelmingly support the allegations in the Division's Complaint. *See* Dkt. ##116-3, 116-4, 116-5.

3

4

5

6

7   Dkt. #122 at 5–6.

8

9

10        "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). If requested discovery is not answered, the requesting party may move for an order compelling such discovery. Fed. R. Civ. P. 37(a)(1). The party that resists discovery has the burden to show why the discovery request should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

11

12

13

14

15

16

17

18

19        Rule 26(b)(3) states:

20

21        > Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative… But… those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

22

23

24   Fed. R. Civ. P. 26(b)(3). "If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id*. A party seeking to withhold production of

25

26

27

ORDER DENYING IN PART DEFENDANTS' MOTION TO COMPEL – 3

discoverable materials as work product under Rule 26 must show that (1) the document was prepared in anticipation of litigation or for trial; and (2) was prepared by or for the party or the attorney asserting the privilege. *See San Diego Gas & Elec. Co. v. Westinghouse Elec. Corp. (In re California Pub. Utilities Comm'n)*, 892 F.2d 778, 780 (9th Cir. 1989). A court "must consider the totality of the circumstances and determine whether the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation." *United States v. Richey*, 632 F.3d 559, 567–68 (9th Cir. 2011).

As an initial matter, some of what Allure seeks in discovery runs contrary to the Court's prior rulings. The allegation that a WAG investigator was a former patient of Defendants does not render these materials relevant. The request for investigation policies, procedures, and training materials is overbroad and touched on by the Court's Protective Order preventing Allure from questioning Plaintiff's 30(b)(6) witness about "[t]he Consumer Protection Division's general investigative process" and "ethics and training education regarding conflicts of interest." *See* Dkt. #132. The Court agreed with Plaintiff that these topics "presuppose some investigative misconduct by CPD, an allegation for which there is no evidence." *Id*. at 7. The Court will not permit Allure to scoop up all possible information to look for misconduct. The Motion is denied as to these issues.

As expected, Plaintiff argues that interview notes and other internal memoranda prepared by Consumer Protection Division ("CPD") investigators are privileged work product. Dkt. #122 at 7–8 (citing *United States v. Nobles*, 422 U.S. 225, 238-39 (1975); *O'Connor v. Boeing North American, Inc.*, 216 F.R.D. 640, 643-44 (C.D. Cal. 2003)). Plaintiff states that it "has not withheld any responsive documents dated prior to August 2019, the point at which it opened the investigation and reasonably anticipated litigation concerning Allure's practices," and that it "has

logged all responsive documents dated between August 2019 and October 2021 that it withheld based on any claim of privilege." *Id*. at 8.  Plaintiff draws a factual distinction between the nature of its investigation here and the investigations in the cases cited in Allure's brief where courts compelled production of materials created in the ordinary course of business.  *Id*.  Plaintiff asserts that "[m]inor inaccuracies in declarations, willingly corrected during a deposition, are far from sufficient grounds to strip away work product protections."  *Id*.

The Court agrees with that last sentence, however, after reviewing the record, the Court cannot yet conclude that Plaintiff reasonably anticipated litigation as early as August 2019.  This is a threshold issue that must be discussed at oral argument.  Plaintiff states that "CPD circulated a confidential memorandum to the Litigation Section" at that time but the records say only "[o]pen matter. An AAG will be assigned."  *See* Dkt. #123-2.  This is not particularly clear.  There is insufficient argument about what opening a matter means or what CPD did here to prepare for litigation between August 2019 and November 28, 2022.  Prior to reasonably anticipating litigation, factual investigation notes, investigation recordings, factual portions of investigation memorandums, summaries, and reports could be highly relevant and discoverable.  Allure argues, and Plaintiff does not adequately refute, that Plaintiff actually anticipated litigation on November 28, 2022.  *See* Dkt. #99 at 9.  This issue of when Plaintiff reasonably anticipated litigation is of paramount concern to the Court at oral argument.

If these materials are protected by work product privilege, the question turns to substantial need.  Given the mountain of evidence subsequently gathered by Plaintiff, these earlier materials will not be particularly relevant to Plaintiff's claims but could support Allure's affirmative defenses.  The Court went back to the origin of these affirmative defenses to get a feel for what Allure needs to prove and was struck by how they seem to focus more on the actions of Dr.

ORDER DENYING IN PART DEFENDANTS' MOTION TO COMPEL – 5

Portuese than those of Allure or Plaintiff.   Dr. Portuese is not mentioned in the Complaint.   *See* Dkt. #1.   His name is printed in the Answer 49 times.   *See* Dkt. #30.   Although Dr. Portuese is not a party, the Answer practically treats him as such.   For example, Dr. Portuese is accused of engaging in "guerilla marketing against Allure," of disliking Defendant Dr. Sajan because of his immigrant status and ethnicity, and of having "a documented history of animosity towards immigrants and non-Caucasians." *Id*. at 27.   The Answer details a 2022 arrest. *Id*. at 27 – 28 ("Dr. Portuese was arrested for harassing and threatening a Spanish-speaking immigrant who was teaching his mother how to drive near Dr. Portuese's Magnolia home").   Dr. Portuese is alleged to have "demonstrated a bias against the transgender community." *Id*. at 28.   Allure accuses him of being "in the habit of trying to ingratiate himself with individuals in positions of power and influence to weaponize their authority to harass his competitors." *Id*. at 29.   The Answer says Dr. Portuese is a campaign contributor to the state attorney general, Bob Ferguson, and that they discussed the facts of this case. *Id*.   Allure, tying all of this together, says, "[t]he decision to proceed with the investigation into Dr. Sajan requested by Dr. Portuese was a dramatic departure from how the Consumer Protection arm of the WAG had treated prior complaints involving cosmetic and plastic surgery practices." *Id*. at 30.   The Answer goes on to detail the perceived problems with the litigation itself, including settlement negotiations. *See id*. at 30–35.

The facts supporting the affirmative defenses go on for several pages.   However, the actual affirmative defenses are presented in a threadbare list, *e.g.*: "[t]he Complaint fails to state a claim upon which relief can be granted;" "[t]he alleged act or practice was motivated by a legitimate business concern;" "[t]he Defendants assert that Plaintiff has unclean hands and has committed wrongdoing, and this lawsuit is attempting to benefit from this wrongdoing;" "[t]his action is

barred, in whole or in part, by laches." *See* Dkt. #30 at 35–36.  Allure does not allege *how* Plaintiff

has unclean hands or *how* this action is barred by laches.

Just from the pleading, it is not clear how the discovery at issue could help Allure mount

a defense to the claims by pointing the finger at Dr. Portuese or his campaign contributions to

Bob Ferguson.  Reviewing the briefing for this Motion, the Court has a slightly better idea of

what Defendants could argue at trial.  For example, Allure states:

> The investigation file, created primarily by non-attorney
> investigators, is also highly relevant to other aspects of the litigation.
> For example, the WAG argues that in August 2019, it had evidence
> of "significant wrongdoing." *Id*. at Ex. I, p. 72. Yet, if the WAG's
> motives were to protect consumers, they could have easily contacted
> Defendants to ask them to stop the "significant wrongdoing" they
> contend harmed consumers. Instead, the WAG delayed contacting
> Defendants for over two years, confirming the investigation had
> nothing to do with protecting consumers. Further, evidence about
> the WAG's investigation goes to Defendants' unclean hands, laches,
> and statute of limitations affirmative defenses.

Dkt. #99 at 5–6.  Laches and the statute of limitations are not addressed in Plaintiff's Response,

and unclean hands is not analyzed in sufficient detail.  *See* Dkt. #122 at 6.

The Court has not been presented with a cogent argument as to how the investigative notes

or other materials requested here can demonstrate unclean hands.  It is possible that the materials

could be used to demonstrate laches or a statute of limitations defense.  Taking all of this into

consideration, the Court will also discuss substantial need at oral argument.

The Court finds that Plaintiff's privilege log is in compliance with the ESI agreement

between the parties and this portion of the Motion will be denied.  *See* Dkt. # 122 at 12.

Having reviewed the relevant briefing and the remainder of the record, the Court hereby

finds and ORDERS that Allure's Motion to Compel, Dkt. #99, is DENIED IN PART.  The Court

will set this matter for oral argument to discuss when Plaintiff reasonably anticipated litigation

ORDER DENYING IN PART DEFENDANTS' MOTION TO COMPEL – 7

and Defendants' substantial need for these materials only.  The parties will be contacted by the

Court's in-court deputy clerk to schedule a hearing date.

DATED this 9th day of May, 2024.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER DENYING IN PART DEFENDANTS' MOTION TO COMPEL – 8